[Cite as *State v. Colley*, 2010-Ohio-4834.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

State of Ohio,                                    :
                                                  :
    Plaintiff-Appellee,           :
                                                  :                    Case No. 09CA3323
    v.                            :
                                                  :                    DECISION AND
Joseph Colley,                                    :                    JUDGMENT ENTRY
                                                  :
    Defendant-Appellant.          :                    File-stamped date:  9-30-10
_____

APPEARANCES:

Luke Brazinski, Luke Brazinski Law Office, Portsmouth, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecutor, and Danielle M. Parker, Scioto County
Assistant Prosecutor, Portsmouth, Ohio, for Appellee.
_____

Kline, J.:

{¶1}     Joseph Colley (hereinafter "Colley") appeals the judgment of the Scioto

County Court of Common Pleas.  After a jury trial, Colley was convicted of

robbery, theft, felonious assault, and aggravated robbery with a firearm

specification.  On appeal, Colley initially contends that the trial court erred in

denying his motion for a continuance.  We disagree.  Because a majority of the

relevant factors weigh against Colley's request for a continuance, we cannot find

that the trial court abused its discretion.  Next, Colley contends that insufficient

evidence supports his conviction for aggravated robbery.  Specifically, Colley

argues that there is no evidence he actually possessed a firearm.  We disagree.

After viewing the evidence in a light most favorable to the prosecution, any

rational trier of fact could have reasonably inferred that Colley possessed a gun

while attempting or committing a theft offense. Finally, Colley contends that his convictions are against the manifest weight of the evidence because (1) there is no evidence that he actually possessed a firearm and (2) a victim's identification of Colley fell short of the beyond-a-reasonable-doubt standard. We disagree. First, we find substantial evidence upon which the jury could have reasonably concluded that Colley possessed a gun. And second, we cannot say that the jury lost its way and created a manifest miscarriage of justice by relying on the victim's identification of Colley. Therefore, the jury could have reasonably concluded that all the essential elements of the four offenses were proven beyond a reasonable doubt. For these reasons, we overrule Colley's three assignments of error and affirm the judgment of the trial court.

I.

{¶2}     Sometime between 3:00 a.m. and 3:15 a.m. on April 28, 2009, Colley entered a Speedway gas station in Portsmouth, Ohio. After approaching the cashier on duty (hereinafter the "Speedway Cashier"), Colley stuck his hand in his pocket. Then, Colley pulled his hand out of his pocket, tucked that same hand underneath his shirt, and said, "Give me all your money or I'll shoot you." Trial Transcript at 60. The Speedway Cashier did not actually see a gun on Colley's person. Nevertheless, she backed away from the cash register, hit the store's panic button, and ran outside into the parking lot. After that, Colley fled from the store, and the Speedway Cashier called 9-1-1 from someone else's cell phone.

{¶3}     Speedway's video surveillance system recorded Colley's time inside the store.  In the surveillance video, Colley can be seen at the store's counter with his hand tucked into his shirt.  But the surveillance video does not show whether Colley had an actual gun on his person.

{¶4}     Shortly after 3:30 a.m. that same morning, a woman (hereinafter the "Hospital Victim") was walking on the grounds of the Southern Ohio Medical Center (hereinafter the "Medical Center").  While she was looking for the emergency room, the Hospital Victim noticed that someone was following her. That someone turned out to be Colley, who confronted the Hospital Victim and demanded her purse.  The Hospital Victim described their encounter in the following way: "This man [Colley] gets in front of me and tells me to give my purse to him.  And I'm like 'no,' because I thought it was some kind of joke.  Then he starts just struggling, taking it from me.  And as he's yanking and yanking and pulling, and I feel myself hit the ground, then I feel – he's taking my head and bashing it on the pavement.  And then – (Witness crying)[.]"  Trial Transcript at 84.  Colley eventually took control of the Hospital Victim's purse, which contained approximately $300 and several pieces of jewelry.  (The Hospital Victim cannot remember what happened next, but Colley apparently fled the scene after obtaining her purse.)

{¶5}     The Hospital Victim eventually "came to" and sought help by pounding on a door to the Medical Center.  At 3:52 a.m., the Medical Center admitted the Hospital Victim as a patient.  After she received treatment for her attack-related injuries, the Hospital Victim left the Medical Center at approximately 9:00 a.m.

**{¶6}** Later that morning, a Portsmouth Police Detective visited the Hospital Victim's home and showed her a photo lineup that included a picture of Colley. The Hospital Victim initialed Colley's photograph, but she also indicated that she was "unsure" about the identification. At trial, the Hospital Victim attributed her initial uncertainty to nervousness and the effects of pain medication. The Hospital Victim later positively identified Colley as her attacker.

**{¶7}** On May 19, 2009, a Scioto County Grand Jury returned a four-count indictment against Colley. For attacking the Hospital Victim, Colley was indicted for robbery, theft, and felonious assault. And for the Speedway incident, Colley was indicted for aggravated robbery with a firearm specification.

**{¶8}** On June 3, 2009, the state responded to Colley's request for discovery. In their response, the state indicated that it possessed a surveillance video from the Medical Center. This video shows the Hospital Victim (1) walking in the parking lot before the attack and (2) pounding on the door after the attack. The attack itself, however, happened outside of the surveillance system's camera range. Apparently, Colley's trial counsel first viewed the Medical Center surveillance video in early August 2009.

**{¶9}** On June 4, 2009, the trial court set Colley's trial date for September 14, 2009.

**{¶10}** On September 9, 2009, Colley filed a motion in limine seeking to suppress the Medical Center surveillance video. The trial court addressed the motion in limine at a September 11, 2009 hearing. At the start of the hearing, Colley orally requested a continuance so that he could obtain an expert. The

surveillance video contains two different time stamps, and Colley wanted an expert to review the video and determine the correct time stamp. For example, one of the time stamps says approximately 3:32 a.m., which supports the state's theory that Colley attacked the Hospital Victim after the Speedway robbery. But the other time stamp says approximately 2:30 a.m., which does not comport with the state's version of events. (For ease of analysis, we have referred to the time stamps as the "3:32 a.m." time stamp and the "2:30 a.m." time stamp. Obviously, the time stamps changed chronologically during the video.)

**{¶11}** At the September 11, 2009 hearing, the Medical Center's security manager testified that the 3:32 a.m. time stamp establishes the correct time in the surveillance video. As he explained, the 3:32 a.m. time stamp "comes from our computer, comes from our I.S.P.; it comes from the computer system throughout the whole house. This is the only time I use. This is the real time." September 11, 2009 transcript at 11. The state also argued that the Hospital Victim's time of admission to the Medical Center (3:52 a.m.) supports the accuracy of the 3:32 a.m. time stamp. Apparently, default factory settings in the surveillance equipment created the 2:30 a.m. time stamp.

**{¶12}** The trial court denied Colley's request for a continuance. As the trial court judge explained, "I believe [the security manager] has given this Court satisfactory explanation as to difference in the stamp files. I understand a little bit about computers; if it goes through a server that's the time that the server is providing. I've never had a problem with my clock on my computer. It's always

more accurate than anything else.  So I don't see any basis for a continuance at this time[.]" September 11, 2009 Transcript at 29.

**{¶13}** After a jury trial, Colley was convicted of all four counts and sentenced accordingly.

**{¶14}** Colley appeals from his judgment of conviction and asserts the following three assignments of error: I. "The Trial Court [e]rred when it denied Appellant's request for a continuance, so that Appellant would have the opportunity to procure an expert to review legitimate questions about a significant piece of evidence."  II. "The Trial Court committed plain error in sentencing the Appellant on the aggravated robbery charge when the evidence presented at trial was not sufficient to establish that Appellant was armed in any manner."  And, III. "The trial court erred when it entered judgment against the Appellant when the evidence presented to establish Appellant's conviction was of insufficient weight for a reasonable jury to convict Appellant of the charges in question."

II.

**{¶15}** In his first assignment of error, Colley contends that the trial court erred in denying his motion for a continuance.  Colley notes that the Medical Center surveillance video contains two different time stamps.  For that reason, Colley argues that the trial court should have granted a continuance so that Colley could obtain an expert to determine the video's correct time.

**{¶16}** "We review the denial of a motion for a continuance for abuse of discretion." *State ex rel. Athens Cty. Dept. of Job & Family Servs. v. Martin*, Athens App. No. 07CA11, 2008-Ohio-1849, at ¶22.  See, also, *State v. Carnes*,

Licking App. No. 2009 CA 56, 2010-Ohio-1693, at ¶8; *Gussler v. Morris*, Ross

App. No. 06CA2884, 2006-Ohio-6627, at ¶8.  An abuse of discretion connotes

more than a mere error of judgment; it implies that the court's attitude is arbitrary,

unreasonable, or unconscionable.  *State v. Adams* (1980), 62 Ohio St.2d 151,

157.  "The trial court has broad discretion in ruling on requests for continuances.

* * * However, that discretion is not unlimited."  *State v. Miller* (Apr. 20, 1987),

Tuscarawas App. No. 86AP060038 (internal citation omitted); *Rice v. Lewis*,

Scioto App. No. 09CA3307, 2010-Ohio-1077, at ¶37.

**{¶17}**     "While no 'mechanical formula' exists for determining whether a trial

court has abused its discretion in denying a motion for a continuance, the Ohio

Supreme Court has utilized a 'balancing test which takes cognizance of all the

competing considerations' present in a particular case."  *Carnes* at ¶9, quoting

*State v. Unger* (1981), 67 Ohio St.2d 65, 67.  See, also, *Rice* at ¶38.

**{¶18}**     "In evaluating a motion for a continuance, a court should note, inter

alia: the length of the delay requested; whether other continuances have been

requested and received; the inconvenience to litigants, witnesses, opposing

counsel and the court; whether the requested delay is for legitimate reasons or

whether it is dilatory, purposeful, or contrived; whether the defendant contributed

to the circumstance which gives rise to the request for a continuance; and other

relevant factors, depending on the unique facts of each case."  *Unger* at 67-68.

**{¶19}**     We find that the trial court did not abuse its discretion by denying

Colley's request for a continuance.  Here, the trial court found that the requested

delay was not for legitimate reasons.  According to the trial court, there was no

"basis for a continuance" because the Medical Center's security manager "ha[d] given [the] Court [a] satisfactory explanation as to difference in the stamp files." September 11, 2009 Transcript at 29. Thus, the trial court believed that obtaining an expert was unnecessary. After reviewing the record, we cannot say that this finding is arbitrary, unreasonable, or unconscionable.

**{¶20}** Furthermore, other *Unger* factors weigh in favor of the trial court's decision. The trial court addressed only whether the requested delay was for legitimate reasons, but a "trial court is not required to explicitly outline the *Unger* factors on the record." *State v. Dickens*, Scioto App. No. 09CA3272, 2009-Ohio-4541, at ¶13. And absent evidence to the contrary, we "must presume that the trial court applied the law [in this case, the *Unger* factors] correctly." *State v. Lieser*, Stark App. No. 2008CA00202, 2009-Ohio-2502, at ¶23, citing *State v. Coombs* (1985), 18 Ohio St.3d 123, 125. Here, the record demonstrates that granting the continuance would have created an inconvenience. Colley requested a continuance on Friday, September 11, 2009 – just one business day before his Monday, September 14, 2009 trial date. Thus, granting the continuance would have inconvenienced the court, the state, and the various witnesses. Additionally, Colley contributed to the circumstances that gave rise to his request for a continuance. Colley had access to the surveillance video for nearly two-and-a-half months before he filed his motion. If Colley had acted in a timelier fashion, he could have either (1) had an expert review the surveillance video before trial or (2) requested a continuance in a more convenient manner.

**{¶21}**     We can find just one *Unger* factor in Colley's favor.  That is, he did not

request a continuance before the September 11, 2009 motion.  But in light of the

factors weighing against Colley's request for a continuance, we cannot find that

the trial court abused its discretion.

**{¶22}**     Accordingly, we overrule Colley's first assignment of error.

III.

**{¶23}**     Because Colley did not file a Crim.R. 29 motion for acquittal at the trial

court level, he uses the term "plain error" in his second assignment of error.  But

Colley actually contends that insufficient evidence supports his conviction for

aggravated robbery.  And as Colley notes, we will review his sufficiency-of-the-

evidence challenge even though he did not make a Crim.R. 29 motion.  See,

e.g., *State v. Cooper* (2007), 170 Ohio App.3d 418, 2007-Ohio-1186, at ¶13 ("[A]

defendant preserves his right to object to the alleged insufficiency of the

evidence when he enters his 'not guilty' plea."); *State v. Norman*, Ross App. Nos.

Nos. 08CA3059 & 08CA3066, 2009-Ohio-5458, at ¶92.

**{¶24}**     When reviewing a case to determine if the record contains sufficient

evidence to support a criminal conviction, we must "examine the evidence

admitted at trial to determine whether such evidence, if believed, would convince

the average mind of the defendant's guilt beyond a reasonable doubt.  The

relevant inquiry is whether, after viewing the evidence in a light most favorable to

the prosecution, any rational trier of fact could have found the essential elements

of the crime proven beyond a reasonable doubt."  *State v. Smith*, Pickaway App.

No. 06CA7, 2007-Ohio-502, at ¶33, quoting *State v. Jenks* (1991), 61 Ohio St.3d

259, at paragraph two of the syllabus.  See, also, *Jackson v. Virginia* (1979), 443 U.S. 307, 319.

**{¶25}**     The sufficiency-of-the-evidence test "raises a question of law and does not allow us to weigh the evidence."  *Smith* at ¶34, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175.  Instead, the sufficiency-of-the-evidence test "'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"  *Smith* at ¶34, quoting *Jackson* at 319.  This court will "reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact."  *Smith* at ¶34, citing *State v. Thomas* (1982), 70 Ohio St.2d 79, 79-80; *State v. DeHass* (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus.

**{¶26}**     Under the aggravated-robbery statute, "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"  R.C. 2911.01(A)(1).  In the proceedings below, the jury found that (1) Colley had a firearm on or about his person or under his control and (2) Colley indicated that he possessed the firearm.  Colley argues that there was no evidence he actually possessed a firearm because, as Colley states, "no witness observed any firearm nor was any [firearm] recovered."  Brief of Appellant Joseph Colley at 16.  Nevertheless, we find no merit in Colley's argument.

**{¶27}** "Whether the state has presented sufficient evidence of the actual possession of a deadly weapon is judged based on the totality of the circumstances. *State v. Vondenberg* (1980), 61 Ohio St.2d 285[;] *State v. Green* (1996), 117 Ohio App.3d 644[.] As stated by the Supreme Court of Ohio, '[f]or purposes of establishing the crime of aggravated robbery, a jury is entitled to draw all reasonable inferences from the evidence presented that the robbery was committed with the use of a gun * * *.' *Vondenberg,* syllabus. It is not necessary that the defendant had actually displayed the weapon in order to establish that he had possessed one." *State v. Knight*, Greene App. No. 2003 CA 14, 2004-Ohio-1941, at ¶17 (alterations sic).

**{¶28}** Under circumstances similar to the present case, the Sixth District Court of Appeals upheld an aggravated-robbery conviction in *State v. Haskins*, Erie App. No. E-01-016, 2003-Ohio-70. In that case, "the attendant in [a] gas station robbery testified that appellant threatened 'Are you going to give me the money or do I have to pull this pistol out of my pocket?' The attendant responded immediately by putting up her hands, fearing that appellant did, in fact, have a gun. Although no weapon was actually seen or found, credible evidence was presented from which the jury could have found beyond a reasonable doubt that appellant did, in fact, have a deadly weapon on or about his person or under his control. Therefore, sufficient evidence was presented going to all the elements of the crime[.]" Id. at ¶42.

**{¶29}** And in *Knight*, the Second District Court of Appeals held that "the factfinder may infer that the defendant possessed a deadly weapon based on his

words and conduct." *Knight* at ¶18. As a result, the court upheld an aggravated robbery conviction where "the jury was required to infer that [the defendant] possessed a deadly weapon without his displaying, brandishing or using a gun and without any explicit threat indicating that he had a gun." Id. at ¶20. The conviction was upheld because the defendant "obtained the money from [the store clerk] based on [the clerk's] belief that [the defendant] was armed with a gun – a belief that was based on [the defendant's] actions." Id. at ¶29.

**{¶30}** For similar reasons, we find that sufficient evidence supports Colley's aggravated-robbery conviction. Here, the jury could have reasonably inferred that Colley had a gun based on the circumstances of the robbery. The Speedway cashier testified to the following: "I was standing outside smoking a cigarette, and he [Colley] went in and I followed him in. There was [sic] no other customers in the store. And he walked around the counter. I started into my counter area and he acted like he pulled something out of his pocket and had his hand under his shirt and told me if I didn't give him all the money he was going to shoot me." Trial Transcript at 41. The surveillance video supports the Speedway Cashier's account because the video shows Colley at the counter with his hand tucked into his shirt.

**{¶31}** Finally, the Speedway Cashier's 9-1-1 call contained the following exchange:

**{¶32}** "DISPATCHER: * * * You said you did not see a gun. Did he say he had a gun?

**{¶33}** "CALLER: Yes.

**{¶34}** "DISPATCHER: He said he had a gun, but you did not see it.

**{¶35}** "CALLER: No, I didn't.

**{¶36}** "DISPATCHER: But he did tell you he had one.

**{¶37}** "CALLER: He told me he would shoot me."  Trial Transcript at 50.

**{¶38}** Finally, on redirect examination, the Speedway cashier elaborated on Colley's behavior during the robbery.

**{¶39}** "Q. What about the Defendant's actions in the store during the robbery made you believe that he had a gun?  What did he do that made you believe he had a gun?

**{¶40}** "A. He put his hand in his pocket and pulled it out and stuck it under his shirt and he kind of lunged forward and said 'Give me all your money or I'm going to shoot you.'  I just assumed he had a gun.

**{¶41}** "Q. Was this a casual conversation during the time that he was demanding the money?

**{¶42}** "A. No.  He – he yelled at me.

**{¶43}** "Q. What was his demeanor?

**{¶44}** "A. Like he would hurt me.

**{¶45}** "Q. Through those actions did you believe he had a gun?

**{¶46}** "A. Yes, I did."  Trial Transcript at 59.

**{¶47}** After viewing the foregoing evidence in a light most favorable to the prosecution, we believe that any rational trier of fact could have found the essential elements of aggravated robbery proven beyond a reasonable doubt. The jury was entitled to draw all reasonable inferences about the Speedway

robbery. And under the totality of the circumstances, the jury could have reasonably inferred that Colley had a firearm based on (1) Colley's actions while in the store and (2) the Speedway Cashier's belief that Colley actually had a gun.

**{¶48}** Accordingly, for the foregoing reasons, we overrule Colley's second assignment of error.

IV.

**{¶49}** In his third assignment of error, Colley contends that the following convictions are against the manifest weight of the evidence: (1) aggravated robbery, (2) the firearm specification, and (3) the crimes related to the Hospital Victim.

**{¶50}** "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins* (1997), 78 Ohio St.3d 380, at paragraph two of the syllabus. Sufficiency is a test of the adequacy of the evidence, but "[w]eight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other[.]'" *State v. Sudderth*, Lawrence App. No. 07CA38, 2008-Ohio-5115, at ¶27, quoting *Thompkins* at 387.

**{¶51}** "Even when sufficient evidence supports a verdict, we may conclude that the verdict is against the manifest weight of the evidence, because the test under the manifest weight standard is much broader than that for sufficiency of the evidence." *Smith* at ¶41. When determining whether a criminal conviction is against the manifest weight of the evidence, we "will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could

reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eskridge* (1988), 38 Ohio St.3d 56, at paragraph two of the syllabus. See, also, *Smith* at ¶41. We "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." *Smith* at ¶41, citing *State v. Garrow* (1995), 103 Ohio App.3d 368, 370-371; *Martin*, 20 Ohio App.3d at 175. But "[o]n the trial of a case, * * * the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *DeHass*, at paragraph one of the syllabus.

### A. Aggravated Robbery & Firearm Specification

**{¶52}**     Colley contends that both the aggravated-robbery conviction and the firearm specification are against the manifest weight of the evidence. Essentially, Colley repeats the firearm-related arguments that he made under his second assignment of error. Colley contends that, even if "the evidence is found to be sufficient, the evidence is nevertheless far too tenuous" to survive a manifest-weight challenge. Brief of Appellant Joseph Colley at 17.

**{¶53}**     Here, we have reviewed the same evidence that we reviewed in deciding Colley's sufficiency-of-the-evidence challenge. And based on that evidence, we believe that any rational trier of fact could have found the essential elements of aggravated robbery proven beyond a reasonable doubt. That is, Colley's own words and conduct provide substantial evidence upon which the

jury could have reasonably inferred that he had a firearm.  The Supreme Court of Ohio has stated that "[t]he state should not be required to produce the weapon in order to secure a conviction for aggravated robbery.  To do so would emasculate R.C. 2911.01, and reward those armed robbers who have the fortune to escape the scene of the crime, and the foresight to destroy or conceal the weapons before they are apprehended." *Vondenberg* at 289.  Thus, an armed-robbery conviction is not against the manifest weight of the evidence where "the fact-finder may infer the defendant had possessed a deadly weapon based on his words and conduct." *State v. Yopp*, Ashtabula App. No. 2005-A-0001, 2006-Ohio-1682, at ¶26 (rejecting a manifest-weight challenge); see, also, *Haskins* at ¶42; *Green* at 651-52.

**{¶54}** For example, in *Green*, the Second District Court of Appeals concluded "that, under the facts of this case, where appellant made several threats to 'blow the heads off' the victims, with his hand or hands either concealed or used in a manner consistent with having a concealed gun, and where appellant was able to compel the surrender of the money based upon his actions and the victims' suspicions that he was armed and could carry out his threat, the state sufficiently proved" the offense of aggravated robbery.  Id. at 651.

**{¶55}** In the present case, the Speedway cashier testified that Colley concealed his hand and threatened to shoot her.  Moreover, the Speedway cashier testified that she was scared because she believed that Colley did indeed have a gun.  After reviewing the record, and based on the totality of the circumstances, we have found no evidence to rebut the reasonable inference

that Colley possessed a firearm during the Speedway robbery. As such, we cannot say that the jury lost its way, and we find substantial evidence upon which the jury could have reasonably concluded that all the elements of aggravated robbery had been proven beyond a reasonable doubt.

**{¶56}** We also find that Colley's firearm specification is not against the manifest weight of the evidence. For a firearm specification to apply, an offender must have "had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2941.145(A). Other courts have found that "[a] victim's belief that [a] weapon is a gun, together with the intent on the part of the accused to create and exploit that belief for his own criminal purposes, is sufficient to prove a firearm specification." *State v. Poulson*, Franklin App. No. 09AP-778, 2010-Ohio-3574, at ¶37, quoting *State v. Dutton*, Franklin App. No. 09AP-365, 2009-Ohio-6120, at ¶8. See, also, *State v. Greathouse*, Montgomery App. No. 21536, 2007-Ohio-2136, at ¶19.

**{¶57}** Here, the Speedway cashier testified that Colley pulled his hand out of his pocket and tucked it under his shirt. The Speedway cashier clearly believed that Colley had a gun, and Colley exploited that fear during the robbery. Again, based on the totality of the circumstances, we have found no evidence rebutting the reasonable inference that Colley possessed a firearm. As such, we cannot say that the jury lost its way, and we find substantial evidence upon which the

jury could have reasonably concluded that the firearm specification had been proven beyond a reasonable doubt.

### B. The Hospital Victim

**{¶58}** Colley briefly argues that the Hospital Victim's identification of Colley "falls short of the beyond a reasonable doubt standard that should have been followed by the jury." Brief of Appellant Joseph Colley at 18. For that reason, Colley contends that the convictions related to the Hospital Victim are against the manifest weight of the evidence. We disagree. During her testimony, the Hospital Victim identified Colley as her attacker.

**{¶59}** "Q. Were you able to see the individual who attacked you that evening?

**{¶60}** "A. Yes. He was in front of me.

**{¶61}** "Q. Okay. Were you fairly close to each other?

**{¶62}** "A. Yes, real close.

**{¶63}** "Q. And is the individual who attac[k]ed you that night present in the courtroom today?

**{¶64}** "A. Yes.

**{¶65}** "Q. Could you show the jurors where he is?

**{¶66}** "A. Right there. (Witness pointing to the Defendant)

**{¶67}** "THE COURT: The record will reflect the witness has pointed to and identified the defendant, Joseph Colley." Trial Transcript at 95.

**{¶68}** We recognize that the Hospital Victim was initially "unsure" after seeing Colley's picture in the photo lineup. As a result, the defense attacked the

Hospital Victim's identification of Colley. Nevertheless, "the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness. * * * Accordingly, [t]his court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict." *State v. Rhines*, Montgomery App. No. 23486, 2010-Ohio-3117, at ¶39 (internal citations omitted) (alteration sic). And here, we will defer to the jury, which found the Hospital Victim's identification of Colley to be credible.

{¶69}     Furthermore, the Hospital Victim saw the picture of Colley shortly after being released from the hospital. And based on the Hospital Victim's own testimony, the jury could have reasonably attributed any initial uncertainty to nervousness and the effects of pain medication. At trial, the Hospital Victim was "100 percent" certain that Colley was her attacker. Trial Transcript at 100. Therefore, we cannot say that the jury lost its way and created a manifest miscarriage of justice.

C.

{¶70}     For the foregoing reasons, we find that the jury did not lose its way and create such a manifest miscarriage of justice that Colley's convictions must be reversed and a new trial be granted. We find substantial evidence upon which

the jury could have reasonably concluded that all the elements of the following crimes were proven beyond a reasonable doubt: (1) aggravated robbery, (2) the firearm specification, and (3) the crimes related to the Hospital Victim.

**{¶71}**     Accordingly, we overrule Colley's third assignment of error.  Having overruled all his assignments of error, we affirm the judgment of the trial court.

                                                                            **JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and Appellant pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

McFarland, P.J.:  Concurs in Judgment and Opinion.
Harsha, J.:  Concurs in Judgment Only.

For the Court

BY:  _____
       Roger L. Kline, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**