[Cite as *State v. Graham*, 2022-Ohio-1140.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2021-P-0035** |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeal from the Court of Common Pleas |
| DAMANTAE D. GRAHAM, | Trial Court No. 2016 CR 00107 E |
| Defendant-Appellant. | |

## O P I N I O N

Decided: April 4, 2022
Judgment: Reversed and remanded

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Timothy Young*, Ohio Public Defender; *Michelle Umana* and *Erika M. LaHote*, Assistant State Public Defenders, 250 East Broad Street, Suite 1400, Columbus, OH 43215 (For Defendant-Appellant).

*Amanda J. Powell*, National Juvenile Defender Center, P.O. Box 281, Columbus, OH 43216; *Katrina L. Goodjoint* and *Marsha L. Levick*, Juvenile Law Center, 1800 JFK Boulevard, Suite 1900 B, Philadelphia, PA 19103 (For Amicus, Juvenile Law Center).

MARY JANE TRAPP, J.

{¶1} Appellant, Damantae D. Graham ("Mr. Graham"), appeals from the judgment of the Portage County Court of Common Pleas sentencing him to life imprisonment without the possibility of parole for aggravated murder following the Supreme Court of Ohio's vacation of his death sentence.

{¶2} Mr. Graham asserts three assignments of error, contending that (1) the Eighth and Fourteenth Amendments prohibit a sentence of life imprisonment without the possibility of parole for offenders who were 21 years old and younger at the time of the offense; (2) the trial court abused its discretion by failing to grant his request for a continuance of the resentencing hearing; and (3) the trial court lacked jurisdiction to resentence him while his application to reopen his direct appeal was pending in the Supreme Court of Ohio.

{¶3} After a careful review of the record and pertinent law, we find as follows:

{¶4} (1) The trial court was not divested of jurisdiction to resentence Mr. Graham based on his filing of an application to reopen his direct appeal in the Supreme Court of Ohio.

{¶5} (2) The trial court abused its discretion by denying Mr. Graham's request to continue the resentencing hearing to permit mitigation testimony from one of his expert witnesses.

{¶6} (3) Our disposition of Mr. Graham's second assignment of error renders his first assignment of error moot.

{¶7} Thus, we reverse the Portage County Court of Common Pleas' judgment entry of March 2, 2021, vacate Mr. Graham's sentence on count 1, and remand for resentencing pursuant to R.C. 2929.06.

{¶8} Our decision must not be taken as a diminishment of the brutal crimes committed by Mr. Graham. Our determination that the failure to grant a short continuance so a mitigation expert could testify constituted prejudicial error only mandates a new sentencing hearing; it does not limit the trial court's options in reimposing sentence.

2

{¶9} The Supreme Court of Ohio spared Mr. Graham the death penalty and sent the case back to the trial court for resentencing. Our role is to review the trial court's sentencing process to determine if there were any prejudicial due process errors. We recognize that a full mitigation hearing was not required following the vacation of Mr. Graham's death sentence. But mitigation testimony from a relevant expert witness remains vitally important when a trial court is considering any felony sentence, particularly one as serious as life imprisonment without parole.

**Substantive and Procedural History**

{¶10} In 2016, Mr. Graham shot and killed 18-year-old college student Nicholas Massa during the robbery of an apartment in Kent, Ohio. Mr. Graham had turned 19 the month before he committed the offenses.

{¶11} Following a jury trial in the Portage County Court of Common Pleas, Mr. Graham was found guilty of aggravated murder (count 1); three death-penalty specifications accompanying count 1; aggravated burglary (count 2); aggravated robbery (count 3); three counts of kidnapping (counts 4, 5, and 6); and six firearm specifications accompanying the six counts.

{¶12} The jury recommended that Mr. Graham be sentenced to death on count 1. The trial court accepted the jury's recommendation and sentenced Mr. Graham accordingly. It also imposed an aggregate prison term of 61 years on the remaining counts and specifications.

{¶13} Mr. Graham filed a direct appeal of right in the Supreme Court of Ohio, raising 14 propositions of law. While his appeal was pending, Mr. Graham instituted postconviction proceedings in the trial court alleging 48 grounds for relief. In December

3

2020, the Supreme Court of Ohio affirmed Mr. Graham's convictions, vacated his death sentence, and remanded the matter to the trial court for resentencing consistent with R.C. 2929.06. *See State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 217 ("*Graham I*").

### *Prehearing Matters*

{¶14} The Supreme Court of Ohio's mandate was filed in the trial court on January 6, 2021. On the same date, Mr. Graham, through counsel, filed a motion for appointment of counsel for purposes of resentencing. Mr. Graham requested the appointment of two attorneys who were certified in capital cases to serve as "trial lead counsel" and "trial co-counsel," respectively, and a third attorney to sit as "third chair" who would not bill for her time. The next day, the trial court scheduled Mr. Graham's resentencing hearing for March 8.

{¶15} On January 26, Mr. Graham, through counsel, filed a motion to continue the March 8 resentencing hearing until at least October, indicating that he intended to file a petition for certiorari in the Supreme Court of the United States. The state filed a response opposing Mr. Graham's motion. On February 10, the trial court filed a judgment entry denying Mr. Graham's motion, stating, "The Court finds that based on the motion of the Defendant and the Response of the State, the motion is not well taken and is hereby denied."

{¶16} Meanwhile, on January 21, Mr. Graham's counsel filed a motion in the Supreme Court of Ohio requesting appointment for the purpose of preparing and filing an application to reopen Mr. Graham's direct appeal pursuant to S.Ct.Prac.R. 11.06, which the court granted on February 3. Mr. Graham subsequently filed an application for

4

Case No. 2021-P-0035

reopening on February 26, alleging that he received ineffective assistance of appellate counsel.

{¶17} On the same date, Mr. Graham, through counsel, filed a "renewed" motion in the trial court to continue the March 8 resentencing hearing. As grounds, Mr. Graham stated that (1) his application for reopening in the Supreme Court of Ohio created a "serious question" regarding the trial court's "authority" to resentence him; (2) his third attorney was scheduled to receive surgery on March 1 and would be unable to travel for at least two months; and (3) Dr. Arcelis Rivera ("Dr. Rivera"), a psychologist who evaluated Mr. Graham and filed a report during his postconviction proceedings, was unavailable to testify on March 8.

{¶18} The state filed a response opposing Mr. Graham's "renewed" motion, which was identical to its response to Mr. Graham's first motion. On March 2, the trial court filed a judgment entry denying Mr. Graham's motion, again stating, "The Court finds that based on the motion of the Defendant and the Response of the State, the motion is not well taken and is hereby denied."

{¶19} On March 4, Mr. Graham filed a resentencing memorandum, attaching reports from Dr. Rivera and a second psychologist, Dr. Laurence Steinberg ("Dr. Steinberg").

{¶20} On the same date, Mr. Graham filed a petition in this court seeking a writ of prohibition enjoining Judge Pittman from resentencing him on March 8. Mr. Graham argued that Judge Pittman patently and unambiguously lacked jurisdiction as a result of his pending application to reopen his direct appeal in the Supreme Court of Ohio. Judge Pittman filed a motion to dismiss Mr. Graham's petition. In *State ex rel. Graham v.*

5

*Pittman*, 11th Dist. Portage No. 2021-P-0023, 2021-Ohio-665 ("*Graham II*"), we granted Judge Pittman's motion, finding that Mr. Graham did not establish that there are no set of facts under which the trial court could have jurisdiction. *Id.* at ¶ 10.

### *Resentencing Hearing*

{¶21} The resentencing hearing went forward as scheduled on March 8. The defense renewed its objections to proceeding at that time based on Mr. Graham's pending application for reopening and co-counsel's and Dr. Rivera's inability to be present.

{¶22} The defense presented testimony from Dr. Steinberg regarding the different behavioral characteristics of adolescents as compared to adults and recent research on brain development. He testified that by 2015, "there was broad consensus along neuroscientists that there was significant brain maturation going on past age 18 and up until the - into the early 20s." Dr. Steinberg opined that the characteristics that the Supreme Court of the United States has identified as mitigating against a sentence of death for juveniles also applies to life sentences without parole for 18-, 19-, or 20-year-old offenders. On cross-examination, Dr. Steinberg conceded that he had not met or interviewed Mr. Graham.

{¶23} The defense also presented statements from Mr. Graham's family members in a 15-minute video discussing the environment in which Mr. Graham grew up.

{¶24} The defense further discussed several factors that the trial court should consider for resentencing, including (1) Mr. Graham's age; (2) family and social dysfunction; (3) mental health and substance abuse; (4) rehabilitation; (5) proportionality; and (6) recidivism. The defense submitted exhibits consisting of Dr. Steinberg's and Dr. Rivera's reports and affidavits from Mr. Graham's family members. The defense

6

requested that the trial court resentence Mr. Graham anew on all six counts and specifications and impose an aggregate prison term of 28 years to life.

{¶25} The state presented testimony from the victim's father, mother, and sister. The state requested that the trial court impose a prison term of life without the possibility of parole on count 1 to run consecutively to the 61-year aggregate prison term that the trial court had previously imposed.

{¶26} The trial court stated that it considered the overriding principles and purposes of felony sentencing and weighed the statutory factors. The trial court sentenced Mr. Graham to prison terms of life without parole on count 1 and three years on the accompanying firearm specification to run consecutively to each other and to the 61-year aggregate prison term that it had previously imposed. The trial court also made statutory findings for consecutive sentences.

{¶27} Finally, the trial court commented as follows:

{¶28} "I remember Mr. Graham after the trial. The one thing that sticks in my mind more than anything else is that you grinned at the family when you walked out that door like you thought this was funny.

{¶29} "You murdered a poor, innocent, young man that was destined to do great things. Because you grew up in a single-family home -- a lot of people have hardships. Most people in this room have had hardships. That doesn't give you the right to take someone's life. I remember the evidence just like it was yesterday, just like it was yesterday."

{¶30} The defense noted its objection to the sentence for the record.

**{¶31}** The trial court subsequently filed a judgment entry that memorialized Mr. Graham's sentences, which Mr. Graham timely appealed.

**{¶32}** In May 2021, the Supreme Court of Ohio denied Mr. Graham's application for reopening. *See State v. Graham*, 163 Ohio St.3d 1416, 2021-Ohio-1606, 167 N.E.3d 975 ("*Graham III*"). Mr. Graham filed separate petitions for a writ of certiorari in the Supreme Court of the United States in May and August, both of which were denied in October.

**{¶33}** Mr. Graham raises the following three assignments of error for our review:

**{¶34}** "[1.] The Eighth and Fourteenth Amendments prohibit a sentence of life without the possibility of parole for offenders who were 21 years old and younger at the time of the offense.

**{¶35}** "[2.] The trial court abused its discretion when it failed to grant Graham's request for a continuance.

**{¶36}** "[3.] The trial court lacked jurisdiction to conduct Graham's resentencing hearing while his application for reopening was pending in the Supreme Court of Ohio."

**{¶37}** We review Mr. Graham's assignments of error in reverse order.

## Trial Court Jurisdiction

**{¶38}** In his third assignment of error, Mr. Graham contends that the trial court was divested of jurisdiction to resentence him based on his filing of an application to reopen his direct appeal in the Supreme Court of Ohio.

### *Standard of Review*

**{¶39}** Determination of a trial court's jurisdiction is a question of law that we review de novo. *Lloyd v. Thornsbery*, 11th Dist. Portage No. 2019-P-0108, 2021-Ohio-240, ¶ 8.

8

*Law and Analysis*

{¶40} Mr. Graham cites no authority directly supporting his contention that the trial court was divested of jurisdiction. Instead, Mr. Graham argues that his application for reopening is analogous to a memorandum in support of jurisdiction filed in the Supreme Court of Ohio and/or an appeal from a trial court's denial of a postconviction petition. We disagree.

{¶41} Mr. Graham appealed his death sentence directly to the Supreme Court of Ohio as of right, which is governed by its own rules of practice. The Supreme Court of Ohio has appellate jurisdiction over "an appeal from a decision of a court of common pleas in a case in which the death penalty has been imposed for an offense committed on or after January 1, 1995." S.Ct.Prac.R. 5.01(A)(4); *see* Ohio Constitution, Article IV, Section 2(B)(2)(c). "To perfect" such an appeal, "the appellant shall file a notice of appeal, accompanied by the court of common pleas' judgment entry" within 45 days from the entry's journalization. S.Ct.Prac.R. 11.01(B)(1). "After a death-penalty appeal of right is perfected from a court of common pleas * * * to the Supreme Court, *the court of common pleas * * * is divested of jurisdiction*, except to take action in aid of the appeal, to grant a stay of execution if the Supreme Court has not set an execution date, or to appoint counsel." (Emphasis added.) S.Ct.Prac.R. 11.01(E).

{¶42} A subsequent application for reopening in the Supreme Court of Ohio is governed by S.Ct.Prac.R. 11.06. It provides, in relevant part, that "[a]n appellant in a death-penalty case involving an offense committed on or after January 1, 1995, may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel in the Supreme Court" within 90 days

9

from the Supreme Court's issuance of its mandate. S.Ct.Prac.R. 11.06(A). "An application for reopening shall be granted if there is a genuine issue as to whether the applicant was deprived of effective assistance of counsel on appeal." S.Ct.Prac.R. 11.06(E).

{¶43} "If the Supreme Court *grants* the application, the Clerk of the Supreme Court shall serve notice on the clerk of the trial court, and the Supreme Court will * * * *[i]mpose conditions, if any, necessary to preserve the status quo during the pendency of the reopened appeal.*" (Emphasis added.) S.Ct.Prac.R. 11.06(F)(2). "If the application is granted, the case shall proceed as on an initial appeal in accordance with these rules," subject to certain exceptions. S.Ct.Prac.R. 11.06(G)(1).

{¶44} S.Ct.Prac.R. 11.06 is analogous to App.R. 26(B), which is applicable in Ohio's district courts of appeals. It permits "[a] defendant in a criminal case" to "apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel" within 90 days from journalization of the appellate judgment. App.R. 26(B). The Supreme Court of Ohio has held that "proceedings under App.R. 26(B) are collateral postconviction proceedings and not part of the direct-appeal process." *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, 818 N.E.2d 1157, syllabus. "Ohio has chosen, through App.R. 26(B), to create an additional and collateral opportunity for raising ineffective-appellate counsel claims after the appeal as of right is finished." *Id.* at ¶ 19.

{¶45} The foregoing authority demonstrates than an appeal and an application for reopening are separate and distinct proceedings. An application for reopening is not an appeal, and the effect of filing an application for reopening is not the same as perfecting

10

an appeal. Rather, pursuant to S.Ct.Prac.R. 11.06(F)(2), the Supreme Court of Ohio's *granting* of an application for reopening and the court's *imposition* of conditions to preserve the status quo affect the trial court's jurisdiction, not the appellant's mere *filing* of such an application.

{¶46} Mr. Graham counters that a trial court's jurisdiction "should" also be divested upon filing because the Supreme Court's granting of an application for reopening is not always timely and because the Supreme Court's ability to preserve the status quo may be "rendered meaningless" by the trial court's actions.

{¶47} The Supreme Court of Ohio alone has the authority to prescribe rules governing practice and procedure in all courts of the state. *Louden v. A.O. Smith Corp.*, 121 Ohio St.3d 95, 2009-Ohio-319, 902 N.E.2d 458, ¶ 9; *see* Ohio Constitution, Article IV, Section 5(B). This court has no authority to modify the Supreme Court's rules to encompass Mr. Graham's desired outcome.

{¶48} Accordingly, the trial court was not divested of jurisdiction to resentence Mr. Graham based on his filing of an application to reopen his direct appeal in the Supreme Court of Ohio.

{¶49} Mr. Graham's third assignment of error is without merit.

## Denial of Continuance

{¶50} In his second assignment of error, Mr. Graham contends that the trial court abused its discretion by denying his request for a continuance.

### *Standard of Review*

{¶51} "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d

11

1078 (1981), syllabus. "An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *Id.* at 67.

**{¶52}** An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

***Legal Principles***

**{¶53}** The Supreme Court of Ohio has stated that "'[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'" *Unger* at 67, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). "Weighed against any potential prejudice to a defendant are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Id.*

**{¶54}** The Supreme Court of Ohio has instructed trial courts to consider several factors in evaluating a motion for a continuance, including "[1] the length of the delay requested; [2] whether other continuances have been requested and received; [3] the inconvenience to litigants, witnesses, opposing counsel and the court; [4] whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; [5] whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and [6] other relevant factors, depending on the unique facts of each case." *Id.* at 68. In addition, a defendant must show how he or she was prejudiced by

12

the denial of the continuance before there can be a finding of prejudicial error. *State v. Broom*, 40 Ohio St.3d 277, 288, 533 N.E.2d 682 (1988).

### *Analysis*

**{¶55}** Mr. Graham first argues that the trial court abused its discretion by failing to consider the *Unger* factors and by failing to provide an explanation for its denial.

**{¶56}** Although the trial court did not expressly consider the *Unger* factors on the record, there is no requirement to do so. *See State v. Colley*, 4th Dist. Scioto No. 09CA3323, 2010-Ohio-4834, ¶ 20. "An appellate court reviewing a lower court's judgment indulges in a presumption of regularity of the proceedings below." *Hartt v. Munobe*, 67 Ohio St.3d 3, 7, 615 N.E.2d 617 (1993). In addition, "[a] reviewing court must presume that the trial court applied the law correctly." *State v. Coombs*, 18 Ohio St.3d 123, 125, 480 N.E.2d 414 (1985). Thus, absent evidence to the contrary, we must presume that the trial court considered and applied the *Unger* factors in rendering its judgment. *See Colley* at ¶ 20.

**{¶57}** We find the present matter to be distinguishable from *In re Zak*, 11th Dist. Lake Nos. 2001-L-216 through 2001-L-218, 2003-Ohio-1974, which Mr. Graham cites in support of his argument. In that case, we found that the trial court abused its discretion in denying an out-of-state party's motion to continue a hearing in a child custody dispute where there was no "indication in the record as to why the decision was made." *Id.* at ¶ 33.

**{¶58}** By contrast, this is an aggravated murder case where a death sentence was originally imposed. The Supreme Court of Ohio vacated Mr. Graham's death sentence and issued a mandate ordering the trial court to resentence Mr. Graham. *See* Crim.R. 32

13

Case No. 2021-P-0035

("Sentence shall be imposed without unnecessary delay"). Thus, the trial court's compelling interest in promptly resentencing Mr. Graham is apparent from the record.

{¶59} Mr. Graham next argues that an application of the *Unger* factors demonstrates that the trial court abused its discretion. Mr. Graham's argument focuses on his February 26 "renewed" motion to continue, the stated grounds for which were (1) the trial court's lack of jurisdiction because of Mr. Graham's pending application for reopening in the Supreme Court of Ohio; (2) his third attorney's scheduled surgery on March 1; and (3) Dr. Rivera's unavailability to testify on March 8.

{¶60} Application of the *Unger* factors leads to diverse results. On one hand, Mr. Graham's pending application for reopening was not a legitimate reason to delay the March 8 resentencing. Like in this appeal, Mr. Graham cited no legal authority in his February 26 motion that directly supported his contention that the trial court was divested of jurisdiction. Rather, the applicable authority demonstrates that the trial court was not divested of jurisdiction.

{¶61} Similarly, the scheduled surgery of Mr. Graham's third attorney, while unfortunate, did not present a compelling reason to delay the March 8 resentencing. An indigent criminal defendant does not have a constitutional right to choose the attorney who will represent him; rather, he is only entitled to competent legal representation. *State v. Long*, 2014-Ohio-4416, 19 N.E.3d 981, ¶ 33 (11th Dist.). Mr. Graham was being represented by two attorneys certified in capital cases, while his third attorney was sitting as "third chair."

{¶62} The unavailability of Dr. Rivera to testify on March 8 was a legitimate reason for a continuance. *See State v. Brooks*, 44 Ohio St.3d 185, 195, 542 N.E.2d 636 (1989)

14

("A court may not refuse to grant a reasonable recess for the purpose of obtaining defense witnesses when it has been shown that the desired testimony would be relevant and material to the defense"). However, Mr. Graham did not state when Dr. Rivera was available to testify. *See Unger* at 69 ("the record is totally devoid of any indication of what the potential delay might have been if appellant had successfully secured the second continuance").

{¶63} In addition, Mr. Graham first disclosed Dr. Rivera's unavailability 10 days before the March 8 resentencing, despite the fact that the trial court provided two months' advance notice. Mr. Graham asserted Dr. Rivera's unavailability as his third justification for a continuance, following requests of approximately 90 days to obtain a ruling on his pending application for reopening and "at least two months" to permit his third attorney to recover from surgery.

{¶64} And while Mr. Graham characterizes his January 26 and February 26 motions as a single request for a continuance, he filed his February 26 motion after his January 26 motion was denied, and he focused on different grounds.

{¶65} On the other hand, Dr. Rivera is a psychologist who examined Mr. Graham in July 2018 for his postconviction proceedings and filed a detailed report dated April 11, 2019. We recognize that a full mitigation hearing is not required when an offender is resentenced pursuant to R.C. 2929.06 following a court's vacation of a death sentence. *See State v. Denson*, 66 Ohio App.3d 833, 835, 586 N.E.2d 1125 (1st Dist.1990) ("Unlike its role in R.C. 2929.03 proceedings, the trial court, in conducting a resentencing hearing pursuant to R.C. 2929.06, is not called upon to determine whether to impose a death sentence after weighing the mitigating factors against the aggravating circumstances of

15

the offense committed"). However, mitigation testimony remains vitally important when a trial court is considering any felony sentence, particularly one as serious as life imprisonment without parole.

{¶66} For instance, R.C. 2929.19(A) provides that at a resentencing hearing, "the offender, the prosecuting attorney, the victim or the victim's * * *, and, with the approval of the court, *any other person* may present information relevant to the imposition of sentence in the case." (Emphasis added.). R.C. 2929.19(B)(1)(a) *requires* the trial court to consider such information before imposing sentence.

{¶67} In addition, a trial court imposing a felony sentence must be "guided by" the overriding purposes of sentencing, including the promotion of "effective rehabilitation." R.C. 2929.11(A). The sentence imposed must be "reasonably calculated" to achieve those purposes. R.C. 2929.11(B). A trial court must also consider several factors in relation to the offender and/or the offense, including any relevant factors indicating that "the offender's conduct is less serious than conduct normally constituting the offense" and that "the offender is not likely to commit future crimes." R.C. 2929.12(C) and (E).

{¶68} The findings and professional opinions set forth in Dr. Rivera's report implicated several of these factors. For instance, Dr. Rivera wrote that multigenerational family dysfunction, substance abuse, systemic failures, and negative peer influences contributed to Mr. Graham's poor choices. However, she wrote that Mr. Graham benefitted from and excelled in structured settings. Thus, Dr. Rivera's testimony would have been relevant and material to the trial court's required sentencing considerations. Most crucially, her testimony would have been relevant and material to the issue of

16

whether Mr. Graham should be granted parole eligibility in the future and would have allowed her to supplement the report she penned almost two years earlier.

{¶69} Finally, there is no indication in the record that granting a brief continuance to accommodate Dr. Rivera's schedule would have caused inconvenience to any of the interested parties. Mr. Graham remained incarcerated for his other convictions, and the jury's guilty verdict on the aggravated murder offense remained.

{¶70} Weighing the trial court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice against the potential prejudice to Mr. Graham, we find that the *Unger* factors tipped in favor of granting a continuance to permit Dr. Rivera's testimony.

{¶71} Since the record demonstrates that Dr. Rivera did not testify at the March 8 resentencing hearing, we conclude that Mr. Graham has demonstrated prejudice resulting from the trial court's denial. *See United States v. King*, 127 F.3d 483, 487 (6th Cir.1997) ("The defendant demonstrates 'actual prejudice' by showing that a continuance would have made relevant witnesses available or added something to the defense").

{¶72} Mr. Graham's second assignment of error has merit.

### Constitutionality of Sentence

{¶73} Finally, in his first assignment of error, Mr. Graham contends that the Eighth and Fourteenth Amendments to the federal Constitution prohibit a prison sentence of life without the possibility of parole for offenders who were 21 years old and younger at the time of the offense.

{¶74} Our disposition of Mr. Graham's second assignment of error renders his first assignment of error moot.

17

Case No. 2021-P-0035

{¶75} For the foregoing reasons, the trial court's March 2, 2021, judgment entry is reversed, and Mr. Graham's sentence on count 1 is vacated. This matter is remanded for resentencing pursuant to R.C. 2929.06.


THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

Case No. 2021-P-0035