[Cite as *State v. Nichols*, 2012-Ohio-1608.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 11CA912 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| JAMES NICHOLS, | : | |
| | : | |
| | : | **RELEASED 04/04/12** |
| | : | |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

John Woliver and W. Stephen Haynes, Batavia, Ohio, for appellant.

C. David Kelly, Adams County Prosecutor, and Barbara Moore-Eiterman, Adams County Assistant Prosecutor, West Union, Ohio, for appellee.
_____
Harsha, J.

{¶1}   James Nichols appeals his conviction for disseminating material harmful to juveniles and tampering with evidence.  He argues that the trial court erred by barring testimony from a defense witness who violated a separation of witnesses order.  Because there is no evidence that Nichols' trial attorney connived in, procured or had knowledge of the witness' disobedience of the separation order, the trial court erred by not allowing the witness to testify.  Furthermore, as the proffered testimony would have contradicted the state's rebuttal witnesses and was not cumulative, the exclusion amounted to prejudicial error requiring reversal.  However, because the proffered testimony only pertains to the tampering with evidence charge, only that conviction is reversed.

{¶2}    Nichols also contends that he was denied the effective assistance of counsel because his counsel was unprepared and failed to seek a continuance prior to trial.  However, without explanation Nichols himself decided to switch counsel just three days prior to trial and therefore to the extent that counsel was unprepared, Nichols invited the error.

{¶3}    Nichols further claims that the trial court erred by denying his motions for continuance following jury selection and again during trial.  Because the record confirms that granting these continuances would have caused inconvenience and counsel could not tell the court the amount of time he was requesting, the trial court did not abuse its discretion by denying the motions for continuance.  Moreover, Nichols again put himself in this position by choosing to hire new counsel just days prior to trial.

{¶4}    Nichols also argues that the trial court erred by denying his motion for a new trial based on purported witness misconduct and newly discovered evidence.  However, Nichols did not submit an affidavit as required by the rule to support his claim of witness misconduct.  Therefore the trial court did not abuse its discretion by precluding the testimony of Ashley Laney at the hearing on his motion.  Furthermore, because we have already reversed Nichols' conviction for tampering with evidence based on the proffered testimony of Russell Todd, his argument concerning Todd's testimony is now moot and we decline to address it.

{¶5}    In addition, Nichols contends that the trial court admitted testimony concerning Mrs. Nichols sexual conduct with a dog and pictures taken from a pornographic website in violation of Evid.R. 403(A).  However, the evidence was relevant and considering the nature of the case it was not unfairly prejudicial, i.e. its

probative value was not substantially outweighed by the danger of unfair prejudice. Therefore the trial court did not abuse its discretion by admitting the testimony and photographs into evidence.

{¶6}    Finally, Nichols complains that he was denied the right to a fair trial in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution because of the cumulative effect of his other alleged errors.  Because we have already reversed his conviction for tampering with evidence and our review reveals no additional errors occurred, he was not deprived of his right to a fair trial.

## I. FACTS

{¶7}    The state indicted Nichols on two counts of disseminating material harmful to juveniles in violation of R.C. 2907.31(A)(1) and (A)(2) and one count of tampering with evidence in violation of R.C. 2921.12(A)(1).  The bill of particulars alleged that Nichols showed three juveniles pornography on his computer and knowing that he was being investigated by law enforcement, he subsequently removed the hard drive in order to get rid of evidence.

{¶8}    At arraignment on September 24, 2010, Nichols stated that he intended to hire David Grimes as his attorney.  The court told Nichols that if he did not retain Grimes he had until October 1, 2010, to notify the court who his counsel was.  On September 27, 2010, the trial court set the final pretrial for February 17, 2011, and a jury trial for March 7, 2011.  The trial court also noted that the assignment commissioner spoke with Grimes' office and was advised that Grimes had not yet been retained by Nichols.

{¶9}    At Nichols' request on October 7, 2010, the trial court found him indigent and appointed Richard Campbell to represent him. On December 22, 2010, the trial

court filed the scheduling orders for the case, and again set the trial date for March 7, 2011. Campbell filed various motions, appeared at the scheduled hearing and continued to represent Nichols until three days prior to trial. Then on March 4, 2011, Nichols retained attorney Grimes, who never filed an appearance but represented Nichols at the jury trial that began on March 7, 2011.

{¶10} At trial, Detective Jim Heitkemper testified that he investigated an allegation that Nichols had shown three minors a website that contained pornographic material. He said his investigation led him to a website entitled "Extreme Animal Sex." Over a month after the alleged incident, he printed off several images of the website, which were admitted into evidence as the state's exhibits one through six. Heitkemper explained that the website contained short videos and images of females involved in sexual activities with various animals.

{¶11} Heitkemper also testified about an interview with Nichols, who denied showing the three female victims the website. Nichols stated that the girls came over to the Musser house where he was staying to see their grandfather and asked Nichols if they could use his computer. Nichols also told Heitkemper that the girls "were making this up because he caught them with two marijuana joints and looking for porn on the computer."

{¶12} During the interview, Heitkemper also testified that Nichols claimed the girls "fried" his computer and he subsequently couldn't get it to operate. He then called a friend, Brent Richards, to come over and look at the computer. Richards could not fix the problem and advised Nichols to call Schmitz Technology, a computer service and repair store. He spoke to a Joel Shiveley at Schmitz Technology and subsequently

removed the hard drive from the computer and bought a new one. Nichols told Heitkemper that he left the original hard drive on top of the freezer at the Musser's home, but Heitkemper testified that he was never able to recover it.

{¶13} David Musser, Nichols' brother-in-law, testified that on the date in question Nichols and his wife, Vicki Nichols, were living with him in his home. He explained that Tiffany Davis and Brittany Davis were his ex-wife's nieces and Sabrina Disher was his granddaughter. All three girls had been to his house on numerous occasions. He also stated he had not seen the computer after Mr. and Mrs. Nichols moved out of his home shortly after the incident. On cross-examination, Musser admitted that several people had access to Nichols' computer at various times during his stay, including the date in question.

{¶14} Next Tiffany Davis testified that on the date in question, she went to the Musser home with her sister Brittany Davis and Sabrina Disher. The three girls were in the "computer room," which was off the living room, using the internet to access MySpace, a social networking website.

{¶15} Tiffany explained that while they were using the computer, Nichols came into the room for a few minutes. She testified that he first took the computer mouse from Sabrina and then "clicked on this site and then it came up, thing with porn came up." She testified that the name of the website was "Extreme Animal Sex" and described one of the videos on the website as "a dog and woman having sexual intercourse." She stated that while the video was playing Nichols told them that his ex-wife would put socks on their dog and have sexual intercourse. She then left the room with the two other girls and told Nichols that he was disgusting and he should be

ashamed of himself.  Tiffany explained that she then left the house and walked to her grandmother's home.

{¶16}  The state showed Tiffany exhibits one through six, and she began crying and sniffling.  She confirmed that the state's exhibits were similar to the images she saw on the date in question.

{¶17}  During cross-examination, Tiffany confirmed that the three girls were all sitting in front of the computer on the night in question.  After Nichols entered the room, Tiffany testified the first thing he asked was if they were "looking at porn?"  He then took Sabrina's hand and clicked on the Extreme Animal Sex website.  Tiffany stated she noted the name of the website because she knew it was wrong and that she had to talk to somebody about the incident.  She admitted, however, that when she reported the incident to her teacher she did not mention the name of the website.  She also testified that neither she nor the other girls smoked marijuana on the date in question, but admitted she has since gone to treatment for marijuana use.

{¶18}  Next, Brittany Davis testified that on the night in question she was at the Musser's house with Tiffany and Sabrina.  During that time, she testified that the three of them were using the computer to access the internet when Nichols came into the computer room.  She testified that he first asked if the girls were looking at pornography and he then took the computer mouse from Sabrina and clicked to a website called Extreme Animal Sex.  Next, a small video began playing which showed a dog on top of a girl, having sexual intercourse.   She stated that Nichols told them that "his wife used to have sex with his dog."  After approximately one to two minutes, Brittany testified that she followed her sister Tiffany out of the room.

{¶19}  On cross-examination, Brittany testified that she told her teacher about the incident the following Monday at school.  However, she admitted that she never mentioned animal pornography in her statement.  She also stated that after the incident, she and Sabrina spent the night at the Musser home and her sister Tiffany went home.

{¶20}  Sabrina Disher testified that on the night in question she went with her cousins, Tiffany Davis and Brittany Davis, to her grandfather, David Musser's, home.  After they arrived, Sabrina testified that the three girls went into the computer room and began using the computer to access MySpace.  Subsequently, she stated that Nichols entered the room and asked the girls if they wanted to "see something cool?"  He then took the computer mouse and began typing on the keyboard.  Sabrina testified that "a bunch of little pictures began popping up" on the computer screen showing women having sex with dogs and horses.  Sabrina admitted that she did not recall the exact name of the website, but knew that it had the word "extreme" in the title.  The state then showed Sabrina exhibits one through six.   She described the images as women having sex with dogs and horses and confirmed that they were the same as the images Nichols showed them on the night in question.

{¶21}  Sabrina also testified that after the pictures popped up on the computer screen, Nichols clicked on a video showing a woman and a dog having sex.  She related that sometime during the encounter, Nichols told the girls that his ex-wife would have sex with their dog.  After the video began playing, the three girls got up and left the room.  She also stated that she spent the night at her grandfather's house and the next morning told Jessica Musser about the incident.

**{¶22}** Ashley Laney testified that on the date in question she was employed by Schmitz Technologies as a sales representative. Around that time, she stated that she received a phone call from her uncle, James Nichols. He told her that his computer wasn't working due to a virus and asked her how to delete the browsing history from his computer. She testified that she gave him instructions on how to do so and if that did not work to clean the hard drive.

**{¶23}** Joel Shiveley testified that he also worked at Schmitz Technologies and had a telephone conversation with Nichols around the date in question. Shiveley stated that Nichols called complaining about pop-ups and viruses on his computer. He explained that twice before, Schmitz Technologies had repaired Nichols' computer for the same type of problem, but for this incident he did not bring his computer into Schmitz for a repair. Shiveley testified that the only time he would replace a hard drive was if it was defective or a customer wanted to increase the memory. On this occasion, Shiveley did not recommend that Nichols replace his hard drive. The state then concluded its case-in-chief and rested.

**{¶24}** As its first witness the defense called David Musser, who testified that the three girls were on the computer for at least two and one half hours before he went to bed on the night in question. He also described the computer room and testified that he did not think there was room for three people to sit at the desk in front of the computer. He testified that Nichols had back problems and it would have been very difficult for him to reach across the desk to access the keyboard.

**{¶25}** Next Vicki Nichols, James Nichols' wife, testified that on the night in question she was at her brother, David Musser's, house with her husband. She testified

that Sabrina, Tiffany and Brittany came over around 9:00 p.m. and asked to use the computer. The three girls went into the computer room while the adults watched television in the living room. She stated that nothing unusual happened before she went to bed at 12:30 a.m. and the girls were "just laughing and carrying on in the computer room." She also testified that Mr. Nichols came to bed around 1:30 a.m.

{¶26} Mrs. Nichols further testified that she has never seen her husband view pornography. She denied ever having sexual intercourse with a dog and testified that during their marriage they only owned female dogs.

{¶27} Finally Jim Nichols testified that on the night in question he was living with his brother-in-law, David Musser. He stated that he was watching a movie in the living room with his wife and Mr. Musser. When the movie was over, his wife decided to go to bed. Nichols testified that at 1:25 a.m. Mr. Musser told the girls to get off the computer. Nichols stated that one of the girls then asked him to get her a popsicle. He went to the refrigerator got a popsicle and took it to Sabrina in the computer room. He testified that she told him that they "were gonna surf for some porn." He told them "not on my computer you're not." At that point, Mr. Nichols claimed he saw Tiffany's cigarette pack with two marijuana cigarettes beside it. He testified that he took the drugs and told the girls "they're going in the commode." He then threatened to give them to Mr. Musser, but agreed with the girls that "whatever goes on in here stays in here," and didn't tell him about the marijuana cigarettes. He then claimed that he left the computer room, flushed the drugs down the toilet and went to bed.

{¶28} He testified that the next morning he made breakfast for Brittany and Sabrina. After breakfast he stated that he went into the computer room and noticed that

there was a big pink Playboy bunny emblem on the center of his computer screen. He subsequently tried to get on the computer but it was "locked up" and he "couldn't do anything with it." He claimed that he restarted the computer and tried to fix the problem but it was dead.

{¶29} Nichols further testified that he called his niece, Ashley Laney, and she told him he could not find out what websites the girls went on. He later called Joel Shiveley and he told him that it would $79.95 to repair the computer and it would take a couple days.

{¶30} He denied showing the girls any pornography or ever touching the computer while he was in the computer room with the girls that night. Mr. Nichols testified that he talked to Shiveley, who quoted $160 to put in a new hard drive. He thought that was too expensive so he purchased a cheaper one from Best Buy. He stated that Brent Richards and Bryant Brigs took the hard drive out and he watched them. He stated that they put "the computer, the hard drive, everything" on top of the freezer in the corner of the computer room at the Musser home. He testified that was the last time he saw the hard drive. He claimed that he did not take the hard drive out of the house nor tell anyone else to do so. After Mr. Nichols finished testifying the defense rested.

{¶31} The state then called two rebuttal witnesses. The state first called Brent Richards to testify. He stated that he did not help Nichols remove the hard drive from his computer. During cross-examination he admitted that he looked at the computer, turned it on and the only thing he saw was the Playboy bunny screensaver. He told Nichols that he needed to take the computer to Schmitz Technology and get the

computer fixed.  He claimed he did nothing with the computer after that.  Next Bryant

Brigs also testified that he never installed anything on Nichols computer, nor did he help

Nichols take out the hard drive.

{¶32}  The defense then attempted to call Russell Todd as a surrebuttal witness.

The trial court determined he would not be permitted to testify because he violated a

separation of witnesses order.

{¶33}  After the jury found Nichols guilty of one count of disseminating matter

harmful to juveniles and tampering with evidence, the trial court sentenced him to four

years and nine months in prison.  This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶34}  Nichols raises six assignments of error for our review:

{¶35}  1. "THE TRIAL COURT ERRED BY BARRING THE TESTIMONY OF

RUSSELL TODD FOR VIOLATION OF THE SEPARATON OF WITNESSES ORDER."

{¶36}  2. "THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF

COUNSEL."

{¶37}  3. "THE TRIAL COURT ERRED BY NOT GRANTING A CONTINUANCE

OF THE TRIAL."

{¶38}  4. "THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S

MOTION FOR A NEW TRIAL."

{¶39}  5. "APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL IN

VIOLATION OF HIS RIGHT TO DUE PROCESS UNDER THE FOURTEENTH

AMENDMENT TO THE UNITED STATE[S] CONSTITUTION."

**{¶40}** 6. "THE ADMISSION INTO EVIDENCE OF GRAPHIC PICTURES FROM A WEBSITE, AS WELL AS ALLEGED STATEMENTS ATTRIBUTED TO APPELLANT THAT HIS WIFE HAD SEX WITH AN ANIMAL WAS INADMISSIBLE AND HIGHLY PREJUDICIAL TO APPELLANT."

### III. SEPARATION OF WITNESSES

**{¶41}** In his first assignment of error, Nichols argues that the trial court erred by barring the testimony of Russell Todd because he violated the trial court's order for separation of witnesses.

**{¶42}** Evid.R. 615 states that "at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." "The purpose of a separation order is 'so that [witnesses] cannot hear the testimony of other witnesses' and tailor their own testimony accordingly. Thus, a spectator or witness may not tell a prospective witness what has taken place in court if the judge has ordered separation of witnesses." *State v. Waddy* (1992), 63 Ohio St.3d 424, 434, 588 N.E.2d 819, superseded by state constitutional amendment on other grounds.

**{¶43}** "Exclusion of witnesses is ordinarily a decision within the sound discretion of the trial court. However, where the court seeks to exclude a witness for violating a separation order, there must be a showing that the party calling the witness consented to, connived in, procured or had knowledge of the witness' disobedience." *State v. Smith* (1990), 49 Ohio St.3d 137, 142, 551 N.E.2d 190. Thus, "[t]he threshold question is whether the trial court improperly excluded the testimony of this witness, and, second, whether such exclusion was prejudicial to defendant." Id.

**{¶44}** Here, nothing in the record indicates that Nichols connived in or procured Todd's disobedience of the separation order. During a sidebar conference, Nichols' counsel notified the trial court that he wished to call Todd as a surrebuttal witness and that he had been in the courtroom during previous testimony. However, counsel also stated that he did not previously anticipate calling Todd as a witness. The trial court responded that "it's part of- of our practice, our profession, and certainly trial preparation that we have to consider all the possibilities. Uh, and as the separation of witnesses it would be uh, (inaudible….) He won't be permitted in surrebuttal." Therefore, it appears that trial court's exclusion of Todd's testimony was based on Nichol's presence and some lack of diligence on counsel's part in discovering Todd's value as a defense witness.[1] Because of the implications on the accused's constitutional right to compulsory process, exclusion for violation of an evidentiary rule requires more than a showing of mere negligence on the defense side. Rather, in order to constitutionally justify the drastic sanction of exclusion, there should be evidence of some affirmative misconduct by the defendant. See *Giannelli*, Baldwins Ohio Practice, Evidence (3rd ed.) § 615.10 Sanctions. Here there is no evidence that defense counsel knew he would need to call Todd until after the state rebuttal. Although this might qualify as negligence, it does not amount to affirmative misconduct. Accordingly, we find that the trial court erred by not allowing Todd to testify.

**{¶45}** We must next decide whether the trial court's exclusion of Todd's testimony constituted prejudicial error. A prejudicial error, as opposed to a harmless error, affects the defendant's substantial rights. Crim.R. 52 (A). Initially, the state called

---

[1] Much of the trial court's sidebar conference is classified as inaudible on the trial transcript. Thus, our review is limited only to the transcribed portions.

two rebuttal witnesses to counter Nichols' testimony that Brent Richards and Bryant Brigs helped him remove the hard drive from his computer.  Richards and Brigs each denied helping Nichols remove the hard drive from his computer.

{¶46}  Nichols then attempted to call Russell Todd as a surrebuttal witness. Nichols counsel proffered to the court that Todd would testify he saw Nichols, Richards and Brigs take the hard drive out the computer.  This testimony would have directly contradicted the state's rebuttal witnesses' and lent credibility to Nichols' own testimony. In addition, Todd's testimony would not have been cumulative because the defense called no other witnesses to testify about the removal of the hard drive, other than Nichols himself.  We therefore find that the trial court's exclusion of Todd's testimony constituted prejudicial error and sustain Nichols' first assignment of error.  However, because Todd's proffered testimony only pertains to Nichol's tampering with evidence charge, only that conviction is subject to reversal in this assignment of error.

## IV. EFFECTIVE ASSISTANCE OF COUNSEL

{¶47}  In his second assignment of error Nichols argues that he was denied the effective assistance of counsel because his trial counsel was unprepared for trial. Specifically, Nichols alleges that he failed to seek a continuance before the start of trial, even though he was retained by Nichols just three days prior to the trial date.  However, to the extent that counsel was unprepared, Nichol's himself invited that predicament.

{¶48}  To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, that is, performance falling below an objective standard of reasonable representation; and (2) prejudice, meaning that there is a reasonable probability that but for counsel's errors, the proceeding's result would have

been different. *Strickland v. Washington* (1984), 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

{¶49} To support his claim that his counsel's failure to seek a continuance is per se ineffective assistance, Nichols relies upon *State v. Edwards*, 4th Dist. No. 01CA4, 2002-Ohio-7259. The present case is distinguishable, however, from *Edwards*. There, the original trial counsel sought a continuance five days prior to trial, due to a conflict with another case. The trial court denied the motion and substitute counsel was found only a day prior to trial. Substitute counsel also requested a continuance, which the trial court denied. We held that the original trial counsel's failure to timely file a motion for continuance, when considered with the fact that he failed to exhaust all possible remedies before seeking substitute counsel, constituted ineffective assistance of counsel.

{¶50} Here, the trial date was set five months in advance. The trial court gave Nichols every opportunity to hire private counsel, specifically attorney Grimes if he so chose. However, Nichols requested that the trial court appoint him counsel, who continued to represent him until three days prior to trial. As opposed to the defendant in *Edwards*, Nichols himself chose to hire new counsel only days before trial. In our review, without something in the record to show why a switch in counsel at this late date was appropriate, Nichols invited the error about which he now complains.

{¶51} Although the record shows Grimes did not initially request a continuance on the trial date, after jury selection he did make an oral request for a continuance to allow him to subpoena evidence. Even if we were assume that counsel's performance was deficient under the first prong of the *Strickland* test, there is nothing in this record that establishes specifically how he was prejudiced and how the outcome of the trial would have been different. Perhaps a post conviction proceeding could have supplied this information.

{¶52} Furthermore, counsel does not provide ineffective assistance by failing to file futile motions. See *State v. Parra*, 8th Dist. No. 95619, 2011-Ohio-3977, at ¶78. Here, because the trial date was set so far in advance and Nichols had been given ample opportunity to timely hire Grimes, it is very unlikely the court would have granted counsel's motion for a continuance on the day of trial. In fact, under these circumstances such a denial would not have amounted to abuse of discretion by the trial court. See the following analysis. Accordingly, we overrule Nichols' second assignment of error.

## V. MOTION FOR CONTINUANCE

{¶53} In his third assignment of error Nichols contends that the trial court erred by denying his motion for continuance following jury selection and again during Detective Heitkemper's testimony.

{¶54} "We review the denial of a motion for a continuance for abuse of discretion." *State v. Colley*, 4th Dist. No. 09CA3323, 2010-Ohio-4834, at ¶16. An abuse of discretion connotes more than a mere error in judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable. *State v. Adams* (1980), 62 Ohio

St.2d 151, 157, 404 N.E.2d 144.  "The trial court has broad discretion in ruling on requests for continuances. * * * However, that discretion is not unlimited."  *Colley*, supra, at ¶16.

**{¶55}**  "'While no mechanical formula exists for determining whether a trial court has abused its discretion in denying a motion for continuance, the Ohio Supreme Court has utilized a balancing test which takes cognizance of all the competing considerations present in a particular case.'"  Id. at ¶17.

**{¶56}**  "In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of the case."  *State v. Unger* (1981), 67 Ohio St.2d 65, 67-68, 423 N.E.2d 1078.

**{¶57}**  Here the record shows the trial court denied the motion for continuance based the length of the requested delay and inconvenience to the court.  In making the first motion for a continuance to subpoena records, defense counsel could not tell the court how long the defense would like a continuance.  In denying the motion the trial court noted "I just took a half a day of a jury.  And without any certainty of how long it would take or what you might think you're gonna get from this, * * * then I'm gonna deny the continuance * * *."

**{¶58}** In addressing the motion for the second continuance to pursue discovery issues concerning tape recorded conversations by Dectective Heitkemper, the trial court noted "we've addressed these issues. This matter's been scheduled for trial, I again renew, since September the 27th." It also explained that "[t]hese are matters that I handle at pre-trials and final pre-trials, and the week or two that I call all counsel leading up to trial."

**{¶59}** The record confirms that granting the continuance would have caused inconvenience. The jury had already been selected when both motions were made. The first motion was made just prior to opening statements and the second was made during trial. Thus, granting the continuance would have inconvenienced the court, the state, witnesses and jurors. Additionally, Nichols contributed to the circumstances that gave rise to his request for a continuance. He alleges a continuance was necessary because his counsel only had days to prepare for trial and "was forced to go forward with a seat of the pants defense." However, Nichols put himself in this position by choosing to hire a new attorney only days before trial without making any showing that prior counsel was deficient or there was an irreparable breakdown of that relationship. Accordingly, we find no merit in the third assignment of error.

## VI. MOTION FOR A NEW TRIAL

**{¶60}** In his fourth assignment of error, Nichols claims that the trial court erred by denying his motion for a new trial. Specifically he argues that the trial court erroneously found that an affidavit was required to consider his motion under Crim.R. 33(C) concerning Ashley Laney's testimony and that it did not properly consider whether Russell Todd's testimony constituted newly discovered evidence.

{¶61}  The decision to grant or deny a motion for new trial is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54,  paragraph one of the syllabus.  "To prevail on a motion for a new trial based on newly discovered evidence, a defendant must show: the new evidence has been discovered since trial; the new evidence is material to the issues; the new evidence could not have been discovered before trial even with the exercise of due diligence; the new evidence is not cumulative to the former evidence; the new evidence discloses a strong probability that it will change the result if a new trial is granted; and the new evidence does not merely impeach or contradict former evidence."  *State v. Urbina*, 3rd Dist. No. 4-06-33, 2007-Ohio-3131, at ¶20, citing *State v. Petro* (1947), 148 Ohio St. 505, 76 N.E.2d 370, syllabus.

{¶62}  In addition, Crim.R.33(A) provides:  "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state; * * * (6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at trial.  When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case."

A. Ashley Laney

**{¶63}** Nichols first argues that the trial abused its discretion by refusing to consider the testimony of Ashley Laney in support of his motion for a new trial because he did not submit an affidavit. The record shows that Nichols filed a motion for a new trial under Crim.R. 33(A)(2) and (A)(6) alleging newly discovered evidence. Specifically, Nichols proffered that Ashley Laney would testify that she had a conversation with Brent Richards about removing the hard drive from Nichols' computer. However, her proffered testimony was not supported by an affidavit. During the hearing on the motion, Grimes conceded that her testimony "probably is not the newly discovered [evidence]. It would go more to the witness misconduct portion of our motion [Crim.R. 33(A)(2)]." The state countered that because Nichols did not file an affidavit by Laney with his motion for a new trial she should be precluded from testifying at the hearing.

**{¶64}** The state correctly pointed out that Crim.R. 33(C) requires that "[t]he causes enumerated in subsection (A)(2) and (3) must be sustained by affidavit showing their truth, and may be controverted by affidavit." Because Mr. Grimes clarified for the court that he was basing his motion for a new trial as to the testimony of Ashley Laney under subsection (A)(2), Nichols did not comply with the procedural requirements set forth in Crim.R. 33(C) and the trial court did not abuse its discretion by precluding her testimony on procedural grounds.

### B. Russell Todd

**{¶65}** Because we have already reversed Nichols' tampering with evidence conviction under his first assignment of error, his argument concerning Russell Todd's testimony is now moot and we decline to address it. See App.R. 12(A)(1)(C).

### VII. EVIDENCE RULE 403(A)

**{¶66}** In his sixth assignment of error, Nichols argues that trial court violated Evid.R. 403(A) by allowing into evidence: 1.) testimony concerning Mrs. Nichols sexual activity with a dog; and 2.) pictures taken from the "Extreme Animal Sex" website.  He claims that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

**{¶67}** Evid.R. 403(A) prohibits the introduction of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice.  "Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision."  *State v. Stewart*, 10th Dist. No. 08AP-33, 2009-Ohio-1547, at ¶39, citing *Oberlin v. Akron Gen. Med. Ctr.* (2001), 91 Ohio St.3d 169, 172, 743 N.E.2d 890.  "Unfavorable evidence is not the equivalent of unfairly prejudicial evidence. * * * Evidence that arouses emotions, evokes a sense of horror, or appeals to an instinct to punish may be unfairly prejudicial." (Citations omitted.) *Stewart*, supra, at ¶39.

**{¶68}** "Relevant evidence is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' Evid.R. 401.  The admission or exclusion of relevant evidence rests within the sound discretion of the trial court[.] * * * Absent an abuse of that discretion, an appellate court will not disturb a trial court's ruling on the admissibility of evidence.  * * * The term abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable." *State v. Blevins*, 4th Dist. No. 10CA3353, 2011-Ohio-3367, at ¶31.

**{¶69}** "Only in rare cases are an accused's own actions or language unfairly prejudicial."  Id. at ¶32.  Nichols' statement to the three girls concerning his wife's sexual

activities with a dog were relevant to their claim that he showed them similar images on the website.

**{¶70}** Regarding the pictures taken from the website, Nichols argues they were overly prejudicial because they were taken months after the incident and the testimony of the three girls was sufficient "without any highly inflammatory pictures having to be identified" and shown to the jury.

**{¶71}** Clearly the pictures in this case were relevant, as the girls testified that they were the same or similar to the pictures that the defendant showed them on the night in question. Although the testimony of the three girls described the images they saw, the defendant does not demonstrate how the images could have resulted in an improper basis for the jury's decision. Considering the nature of the case, the probative value of the pictures were not substantially outweighed by the danger of unfair prejudice.

## VIII. RIGHT TO A FAIR TRIAL

**{¶72}** Finally in his fifth assignment of error, Nichols claims that because of the cumulative effect of his other alleged errors he was denied his right to a fair trial in violation of the Due Process Clause of Fourteenth Amendment to the United States Constitution.

**{¶73}** We have already reversed his conviction for tampering with evidence under the first assignment of error. Because our review of the remaining assignments of error reveals no additional error occurred, Nichols was not deprived of his right to a fair trial under the Due Process Clause due to cumulative error.

## IX. CONCLUSION

**{¶74}** In conclusion, we sustain Nichols' first assignment of error and reverse his tampering with evidence conviction on this ground. His other assignments of error are overruled and accordingly we affirm his conviction for disseminating material harmful to juveniles.

JUDGMENT REVERSED IN PART
AND AFFIRMED IN PART
AND CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS REVERSED IN PART AND AFFIRMED IN PART and that the CAUSE IS REMANDED.  Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, P.J. & McFarland, J.:  Concur in Judgment and Opinion.

For the Court

BY: _____
　　　William H. Harsha, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**