[Cite as *State v. Hatton*, 2014-Ohio-3601.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No. 13CA26 |
| vs. | : | |
| MARTIN L. HATTON, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

COUNSEL FOR APPELLANT:     Christopher J. Pagan, 1501 First Avenue, Middletown,
Ohio 45044

COUNSEL FOR APPELLEE:      Judy C. Wolford, Pickaway County Prosecuting Attorney,
and Jayme Hartley Fountain, Pickaway County Assistant
Prosecuting Attorney, 203 South Scioto Street, P.O. Box
910, Circleville, Ohio 43113

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 8-14-14
ABELE, P.J.

{¶ 1}   This is an appeal from a Pickaway County Common Pleas Court judgment that

denied a motion for a new trial filed by Martin L. Hatton, defendant below and appellee herein.

{¶ 2}   Appellant assigns the following error for review:

"THE TRIAL COURT ERRED IN OVERRULING HATTON'S
MOTION FOR A NEW TRIAL."

{¶ 3}   In 1997, two men raped a seventeen-year-old girl in her home.   The girl's father

captured Ricky Dunn as he attempted to flee the home, and Dunn immediately implicated

appellant.   At appellant's trial, Dunn testified for the prosecution.   Dunn stated that as he

attempted to escape the residence, he ran into the homeowner, the victim's father, and yelled, "Marty, Marty, Marty!"   The victim's father asked Dunn who Marty is, and Dunn stated, "I don't know why I am here.   I came with Marty Hatton."

{¶ 4}   Law enforcement officers later arrived and observed the victim's father standing over Dunn, who was laying on the floor and yelling, "Where's Marty?"   Dunn stated several times that he had been at the residence with "Marty" and later explained that it was "Marty Hatton."

{¶ 5}   After hearing additional evidence, the jury found appellant guilty of aggravated burglary, felonious assault, rape, and theft.   In 1999, we affirmed appellant's conviction.   State v. Hatton, 4th Dist. Pickaway No. 97CA34 (Apr. 19, 1999).   Appellant later filed several other post-trial motions and appeals.   State v. Hatton, 4th Dist. Pickaway No. 11CA23, 2013-Ohio-475; State v. Hatton, 4th Dist. Pickaway No. 11CA21, 2012-Ohio-2019; State v. Hatton, 4th Dist. Pickaway No. 09CA4, 2010-Ohio-1245; State v. Hatton, 4th Dist. Pickaway No. 06CA35, 2007-Ohio-3725; State v. Hatton, 4th Dist. Pickaway No. 05CA38, 2006-Ohio-5121; State v. Hatton, 4th Dist. Pickaway No. 00CA10 (Aug. 4, 2000).

{¶ 6}   On March 13, 2013, appellant filed a Crim.R. 33(A)(6) motion for a new trial and requested an evidentiary hearing.   Appellant asserted that Dunn recently recanted his trial testimony identifying appellant as one of the perpetrators and that this new evidence warranted a new trial.   Appellant attached to his motion a five-paragraph affidavit that Dunn signed.   In it, Dunn stated that he "gave false statements inregards [sic] to Martin Hattons [sic] involvement due to being cohersed [sic] and threatend [sic]."   Dunn averred that appellant "had no involvement what so ever in the crimes" and that "Jeff Massie * * * took us to the residense [sic] that evening."  Dunn further stated: "It is also false testimony that [I] was yelling for anyone that evening."

{¶ 7}   On October 28, 2013, the trial court denied appellant's new trial motion without holding an evidentiary hearing.   The court found that appellant failed to show that "the newly-discovered evidence discloses a strong probability that it will change the result if a new trial is granted, and also that the newly-discovered evidence is not being submitted for the sole purpose of impeaching or contradicting the former testimony of co-defendant, Ricky Dunn."   The court found that Dunn's recanted testimony "is highly suspicious given the long history of these two cases.   While the co-defendant has changed his testimony and purportedly admits that he committed perjury, [appellant] wants this Court to ignore all the other trial testimony and evidence presented at [appellant]'s jury trial."   The court explained:

> "This Court presided over [appellant]'s trial and had the opportunity to observe first-hand all of the witness[es'] testimony and demeanor.   This Court has, once again, very thoroughly reviewed Mr. Hatton's case and all the evidence contained therein, including the evidence submitted with [appellant]'s Motion for a New Trial, and finds that the recantation of Ricky Dunn's testimony is not credible."

This appeal followed.

{¶ 8}   In his sole assignment of error, appellant asserts that the trial court erred by overruling his Crim.R. 33(A)(6) new trial motion without holding an evidentiary hearing. Appellant contends that the trial court should have held a hearing to ascertain the credibility of Dunn's recanted testimony.

{¶ 9}   A trial court possesses broad discretion when determining whether to grant a Crim.R. 33(A)(6) new trial motion.   State v. Stewart, 4th Dist. Washington No. 02CA29, 2003-Ohio-4850, ¶10; accord State v. Williams, 43 Ohio St.2d 88, 330 N.E.2d 891 (1975), paragraph two of the syllabus; Domanski v. Woda, 132 Ohio St. 208, 6 N.E.2d 601 (1937), paragraph two of the syllabus; Bedford v. Edwards, 8th Dist. Cuyahoga No. 94532, 2011-Ohio-91,

¶9.   The court likewise possesses discretion when determining whether a new trial motion warrants an evidentiary hearing.   State v. Remy, 4th Dist. Ross No. 03CA2731, 2004-Ohio-3630, ¶79; Stewart; State v. Salinas, 10th Dist. Franklin No. 09AP-1201, 2010-Ohio-4738, ¶49. Consequently, we will not reverse a trial court's decision denying a Crim.R. 33(A)(6) new trial motion without holding an evidentiary hearing unless the court abused its discretion.   Remy.   An "abuse of discretion" means that the court acted in an "'unreasonable, arbitrary, or unconscionable'" manner or employed "'a view or action that no conscientious judge could honestly have taken.'"   State v. Kirkland, — Ohio St.3d —, 2014-Ohio-1966, — N.E.3d —, ¶67, quoting State v. Brady, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶23.   Moreover, a trial court generally abuses its discretion when it fails to engage in a "'sound reasoning process.'" State v. Morris, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶14, quoting AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp., 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).   Additionally, "[a]buse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court."   State v. Darmond, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶34.

{¶ 10}  Crim.R. 33(A)(6) permits a trial court to grant a new trial "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial."   However, trial courts, should subject Crim.R. 33(A)(6) new trial motions to the closest scrutiny:

> "'Applications for new trials on the ground of newly discovered evidence are not, however, favored by the courts, for the reason that the moving party has generally had ample opportunity to prepare his case carefully and to secure all of the evidence before the trial.   Such applications, whether in a court of law or in a court of equity, are entertained with reluctance and granted with caution, not only because

of the danger of perjury, but also because of the manifest injustice in allowing a party to allege that which may be the consequence of his own neglect in order to defeat an adverse verdict. In order to prevent, as far as possible, the fraud and imposition which defeated parties may be tempted to practice as a last resort to escape the consequence of an adverse verdict, an application setting up the discovery of new evidence should always be subjected to the closest scrutiny by the court. The applicant is required to rebut the presumption that the verdict is correct and that there has been a lack of due diligence and to establish other facts essential to warrant the granting of a new trial upon the ground of newly discovered evidence. The rule to be deduced from the cases is that where newly discovered evidence is of such conclusive nature, or of such decisive or preponderating character, that it would with reasonable certainty have changed the verdict or materially reduced the recovery, a new trial should be granted if it is satisfactorily shown why the evidence was not discovered and produced at the time of the trial.'"

Taylor v. Ross, 150 Ohio St. 448, 450-51, 83 N.E.2d 222, 224 (1948), quoting 39 American

Jurisprudence, 163, Section 156; accord Domanski v. Woda, 132 Ohio St. 208, 6 N.E.2d 601

(1937).

{¶ 11} Thus, before a trial court may grant a new trial based upon newly discovered

evidence, a defendant must demonstrate the following:

> "[T]he new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence."

State v. Petro, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus; accord State v. Anderson, 10th

Dist. Franklin No. 13AP-831, 2014-Ohio-1849, ¶9; State v. Nichols, 4th Dist. Adams No.

11CA912, 2012-Ohio-1608, ¶61; State v. Perotti, 4th Dist. Scioto No. 99CA2672 (Feb. 5, 2001).

{¶ 12} "[N]ewly discovered evidence which purportedly recants testimony given at trial is

'looked upon with the utmost suspicion.'" State v. Germany, 8th Dist. Cuyahoga No. 63568 (Sept.

30, 1993), quoting United States v. Lewis, 338 F.2d 137, 139 (C.A.6, 1964); State v. Nash, 8th

Dist. Cuyahoga No. 87635, 2006-Ohio-5925, ¶10; State v. Callihan, 4th Dist. Scioto No. 01CA2815, 2002-Ohio-5878, ¶17. "Recanting affidavits and witnesses are viewed with extreme suspicion because the witness, by making contradictory statements, either lied at trial, or in the current testimony, or both times." State v. Gray, 8th Dist. No. 92646, 2010-Ohio-11, 2010 WL 27872, ¶29, citing State v. Jones, 10th Dist. No. 06AP–62, 2006-Ohio-5953, 2006 WL 3240659, ¶25, and United States v. Earles (N.D.Iowa, 1997), 983 F.Supp. 1236, 1248. Consequently, "'there must be some compelling reason to accept a recantation over testimony given at trial.'" State v. Brown, 186 Ohio App.3d 309, 2010-Ohio-405, 927 N.E.2d 1133, ¶20 (7th Dist.), quoting State v. Fortson, 8th Dist. Cuyahoga No. 82545, 2003–Ohio–5387, ¶13; accord State v. Moore, 7th Dist. Mahoning No. 13MA9, 2014-Ohio-358, ¶25. A trial court should grant a new trial motion based upon recanted testimony "only where the court is reasonably well satisfied that the testimony given by a material witness is false." State v. Germany, 8th Dist. Cuyahoga No. 63568 (Sept. 30, 1993) (citation omitted).

{¶ 13} Thus, a defendant is not necessarily entitled to a new trial when a witness submits an affidavit recanting trial testimony. State v. Perdue, 7th Dist. Mahoning No. 04MA119, 2005-Ohio-2703, ¶19; State v. Monk, 5th Dist. Knox No. 03CA12, 2003-Ohio-6799, ¶19; State v. Gray, 8th Dist. Cuyahoga No. 82841, 2003-Ohio-6643, ¶10; State v. Curnutt, 84 Ohio App. 101, 110, 84 N.E.2d 230 (1948). Instead, when a defendant seeks a new trial based upon a witness's recanted testimony, the trial court must evaluate the credibility of the recanting witness. Toledo v. Easterling, 26 Ohio App.3d 59, 60, 498 N.E.2d 198 (1985). The court must determine whether the recanting witness told the truth at trial or if the witness's recantation is true. Id. "'If the trial

court determines the recantation is believable, the trial court must then determine whether the recanted testimony would have materially affected the outcome of trial.'"   Brown at ¶46, quoting Perdue at ¶18.   Additionally, a trial court need not necessarily hold a hearing to ascertain the credibility of the recanted affidavit testimony.   State v. Brooks, 8th Dist. Cuyahoga No. 75522 (Aug. 5, 1999) (stating that a trial court need not hold a hearing to consider a new trial motion simply because a witness recants or admits to giving perjured testimony); see State v. Hill, 64 Ohio St.3d 313, 333, 595 N.E.2d 884 (1992) (concluding that trial court did not abuse its discretion by overruling new trial motion without holding evidentiary hearing to consider credibility of recanting witness).   Rather, "'the acumen gained by the trial judge who presided during the entire course of [the] proceedings makes him well qualified to rule on the motion for a new trial on the basis of the affidavit and makes a time consuming hearing unnecessary.'" State v. Monk, 5th Dist. Knox No. 03CA12, 2003-Ohio-6799, ¶20, quoting United States v. Curry, 497 F.2d 99, 101 (C.A.5, 1974).

> "'The trial judge is in a peculiarly advantageous position * * * to pass upon the showing made for a new trial. [The judge] has the benefit of observing the witnesses at the time of the trial, is able to appraise the variable weight to be given to their subsequent affidavits, and can often discern and assay the incidents, the influences, and the motives that prompted the recantation. [The judge] is, therefore, best qualified to determine what credence or consideration should be given to the retraction, and [the judge's] opinion is accordingly entitled to great weight.   If the rule were otherwise, the right of new trial would depend on the vagaries and vacillations of witnesses rather than upon a soundly exercised discretion of the trial court.'"

Taylor, 150 Ohio St. at 452, quoting State v. Wynn, 178 Wash. 287, 34 P.2d 900, 901; see State v. Gray, 8th Dist. No. 92646, 2010-Ohio-11, 30 (determining that the trial court did not abuse its discretion by discrediting an affidavit from a witness who recanted his trial testimony implicating the defendant when "the same trial judge who presided over the trial has also presided over the

lengthy procedural history that has ensued").

{¶ 14} After our review of the case at bar, we are unable to conclude that the trial court abused its discretion by overruling appellant's new trial motion. The record does not reveal that the court failed to engage in a sound reasoning process. Instead, the record demonstrates the opposite. The court explained its rationale for discrediting Dunn's affidavit and for overruling appellant's motion without holding an evidentiary hearing. The trial judge observed that he had "presided over [appellant]'s trial and had the opportunity to observe first-hand all of the witness's testimony and demeanor." The trial judge stated that he had "once again, very thoroughly reviewed [appellant]'s case and all the evidence contained therein, including the evidence submitted with [appellant]'s Motion for a New Trial, and finds that the recantation of Ricky Dunn's testimony is not credible." In view of the fact that the trial court presided over appellant's trial and previously heard Dunn's trial testimony that implicated appellant, the court rationally could have determined Dunn told the truth at trial and that Dunn's recanted testimony is highly suspicious and not worthy of belief. See State v. Bell, 4th Dist. Scioto No. 1408 (Mar. 18, 1983) (recognizing that trial judge who presided over defendant's criminal trial was "exceptionally well qualified" to ascertain credibility of recanting witness's affidavit). We find nothing about the court's rationale unreasonable, unconscionable or arbitrary, nor does it represent a view or action that no conscientious judge could have honestly taken. Rather, we believe that the trial court properly exercised its discretion when it reviewed appellant's new trial motion, including Dunn's affidavit, and when it overruled the motion without holding an evidentiary hearing to consider the credibility of Dunn's recanted testimony.

{¶ 15} Additionally, the same trial judge who presided over appellant's criminal trial also

presided over Dunn's criminal trial arising out of the same incident. Thus, the trial judge is obviously familiar with Dunn and has had multiple opportunities to view his demeanor and form an opinion regarding Dunn's credibility.

{¶ 16} Furthermore, we do not believe that the three cases appellant cites to support his argument that the trial court abused its discretion by failing to hold a hearing to consider his new trial motion require us to reach a different conclusion. Appellant first cites State v. Green, 7th Dist. Mahoning App. No. 05MA116, 2006-Ohio-3097, to support his argument that the trial court abused its discretion by overruling his new trial motion without holding an evidentiary hearing. In Green, the defendant filed a new trial motion after a jury found him guilty of kidnapping and complicity to murder. The defendant argued that he was entitled to a new trial due, in part, to the discovery of a new witness to the crimes who stated that the defendant was not involved. The new witness's affidavit indicated that she previously informed law enforcement officers that she had not witnessed any of the criminal acts because she "was too scared to get involved because of all the threats." Id. at ¶21. In her affidavit, the witness stated that the defendant was not involved in the crime and that "she did not admit to knowing what had transpired because she was afraid of what might happen to her." Id. at ¶22. The trial court denied the defendant's motion without holding an evidentiary hearing to consider the credibility of the new witness.

{¶ 17} The defendant appealed and asserted that the trial court abused its discretion by overruling his new trial motion without holding an evidentiary hearing. The appellate court concluded that the trial court abused its discretion by failing to hold an evidentiary hearing to consider the defendant's new trial motion when the defendant offered newly discovered testimony from an eyewitness that "could arguably establish [the defendant's] innocence." Id. at ¶1. The

appellate court noted that the witness's affidavit directly contradicted the testimony of the defendant's co-defendants. The court concluded that because the witness's "testimony could potentially establish [the defendant]'s lack of involvement in both the murder and the kidnapping, the affidavit warrants an evidentiary hearing so that the trial court can listen to the witness testify and then determine whether she is credible." Id. at ¶27.

{¶ 18} Green is distinguishable from the case sub judice. In Green, the newly discovered evidence did not originate from a co-defendant. By contrast, in the case at bar Dunn, appellant's co-defendant, offers the newly discovered evidence. Furthermore, the witness in Green apparently had not previously testified at the defendant's trial. Thus, the witness in Green did not recant any prior testimony. In the case sub judice, by contrast, Dunn did testify at trial and his affidavit recants his prior testimony. Because the witness in Green had not previously testified or recanted any prior testimony, the appellate court apparently determined that the trial court lacked any rational basis to reject her affidavit outright without holding an evidentiary hearing. In the case at bar, however, Dunn had previously testified before the same judge who reviewed appellant's new trial motion. Thus, as we indicated above, the trial court had a rational basis to reject Dunn's affidavit without holding an evidentiary hearing to evaluate his credibility. Moreover, the new witness in Green offered a reason why she had not previously admitted witnessing the crime. In the case at bar, Dunn offers only a generic claim that he was coerced and threatened to implicate appellant. Additionally, the new witness in Green apparently did not have a significant connection to the defendant, while in the case sub judice, appellant and Dunn appear to be friends. It is not beyond belief that Dunn would seek to recant his testimony to exonerate his friend. Consequently, we do not find Green applicable to the case sub judice.

{¶ 19} Appellant next asserts that State v. Fuson, 5th Dist. Knox No. 02CA23, 2002-Ohio-6601, supports his argument that the trial court abused its discretion by overruling his new trial motion without holding an evidentiary hearing. In Fuson, a jury convicted the defendant of three counts of raping his daughters. The three daughters testified at trial and their testimony was the state's primary evidence to support the defendant's conviction. The defendant later filed a new trial motion and attached two of his daughters' affidavits who stated that "they fabricated the claims based on pressure and physical abuse from their mother's boyfriend." Id. at ¶5. The daughters stated that their mother's boyfriend had "beaten and threatened them" and forced them to make the allegations against the defendant. The trial court overruled the defendant's new trial motion without holding an evidentiary hearing and determined that the daughters' trial testimony was more credible than the testimony contained in the affidavits. The defendant appealed and argued that the trial court abused its discretion by overruling his new trial motion without holding an evidentiary hearing to consider the credibility of the daughters' recanted testimony.

{¶ 20} Subsequently, the appellate court determined that the trial court abused its discretion by overruling the defendant's new trial motion without holding an evidentiary hearing. The court explained that the defendant "was convicted primarily on the testimony of [his daughters]. Thus, the recanted testimony does not merely impeach prior evidence, but if believed, would prove appellant's innocence." Id. at ¶11. The appellate court concluded that the trial court should have held an evidentiary hearing "in order to more accurately a[ss]ess the credibility of the witnesses in determining whether the girls were telling the truth at trial or in their recent recantations of their testimony." Id. at ¶12.

{¶ 21} We believe that Fuson is distinguishable from the case at bar. In Fuson, the

recanting witnesses were the victims of the defendant's crime. In the case at bar, by contrast, the recanting witness is not a victim of appellant's crime, but, instead was also implicated in the same crimes as appellant and appears to be appellant's friend. Additionally, in <u>Fuson</u> the recanting witnesses' trial testimony was the state's primary evidence used to convict the defendant. In the case at bar, Dunn's testimony was not the only evidence that the state used to convict appellant. See our analyses in <u>State v. Hatton</u>, 4th Dist. Pickaway No. 09CA4, 2010-Ohio-1245; <u>State v. Hatton</u>, 4th Dist. Pickaway No. 05CA38, 2006-Ohio-5121; <u>State v. Hatton</u>, 4th Dist. Pickaway No. 97CA34 (Apr. 19, 1999).

{¶ 22} Appellant also relies upon <u>State v. Gaines</u>, 1st Dist. Hamilton No. C-090097, 2010-Ohio-895, to support his argument that the trial court abused its discretion by discrediting Dunn's affidavit without holding an evidentiary hearing. In <u>Gaines</u>, the defendant stood trial for murder. At trial, the victim's half-brother, Brandon Mincy, "provided the only eyewitness account of the murder," and implicated the defendant—his cousin. <u>Id.</u> at ¶6. A jury found the defendant guilty of murder. The defendant later filed a new trial motion and offered an affidavit from a newly discovered eyewitness, Gregory M. Carter, a bystander to the crime. Carter implicated two individuals other than the defendant in the victim's murder. The defendant also offered an affidavit from Mincy, the principal eyewitness at the criminal trial. In his affidavit, Mincy recanted his trial testimony and exonerated the defendant.

{¶ 23} After the trial court overruled the defendant's new trial motion, the defendant appealed and argued that the trial court abused its discretion by overruling his motion without holding an evidentiary hearing to ascertain the credibility of the affidavit testimony. The court of appeals agreed. In reaching its decision, the appellate court first observed that a trial court may

assess the credibility of affidavit testimony without conducting an evidentiary hearing.   The

Gaines court applied the State v. Calhoun, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), factors that

the Ohio Supreme Court outlined for trial courts to use when evaluating affidavits submitted in

support of a postconviction relief petition.   Id. at ¶25.   The Gaines court explained:

> "The Ohio Supreme Court in State v. Calhoun set forth factors for a
> common pleas court to consider in assessing the credibility of affidavits submitted
> in support of, and thus in determining the need for an evidentiary hearing on, an
> R.C. 2953.21 petition for postconviction relief.   The common pleas court must
> accord the affidavits 'due deference.'   But the court 'may, in the sound exercise of
> discretion, judge their credibility' and 'may, under appropriate circumstances * * *,
> deem affidavit testimony to lack credibility without first observing or examining the
> affiant.'   In determining whether, in a 'so-called paper hearing,' to 'accept * * *
> affidavits as true statements of fact,' or to instead discount their credibility, the
> common pleas court must consider 'all relevant factors,' including '(1) whether the
> judge reviewing the postconviction relief petition also presided at the trial, (2)
> whether multiple affidavits contain nearly identical language, or otherwise appear to
> have been drafted by the same person, (3) whether the affidavits contain or rely on
> hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise
> interested in the success of the petitioner's efforts, * * * (5) whether the affidavits
> contradict evidence proffered by the defense at trial,' (6) whether the affidavits are
> 'contradicted by' the trial testimony of the affiants, and (7) whether the affidavits
> are 'internally inconsistent.'
>         The supreme court declared that the Calhoun analysis was 'supported by
> common sense' and advanced 'the interests of eliminating delay and unnecessary
> expense[] and furthering the expeditious administration of justice.'   Those same
> interests would be served by applying the Calhoun factors to assess the credibility of
> affidavits submitted in support of, and thus to determine the need for an evidentiary
> hearing on, a Crim.R. 33(A)(6) new-trial motion.   We, therefore, join those
> appellate districts that have adopted the Calhoun analysis for that purpose."

Id. at ¶¶25-26 (footnotes omitted).

{¶ 24} The Gaines court then evaluated Carter's affidavit using the Calhoun factors.   The

court determined that Carter's affidavit could not be discounted and observed that: (1) the same

judge who presided over the defendant's criminal trial was not the same judge who reviewed the

defendant's new trial motion; (2) Carter's affidavit did not appear to have been drafted by the same

person or use identical language to other affidavits; (3) Carter's affidavit did not rely on hearsay; (4) "Carter had no apparent interest in [the defendant] securing a new trial;" (5) Carter's affidavit "did not conflict in any material respect with the evidence offered by the defense at trial;" and (6) Carter's affidavit was internally consistent.   Id. at ¶28.   The court further observed that Carter's account directly contradicted Mincy's trial testimony regarding the events surrounding the shooting.

{¶ 25}  The court next reviewed the trial court's finding that Carter's affidavit testimony would not change the result if it granted the defendant a new trial.   The trial court determined that because Carter's affidavit conflicted with Mincy's trial testimony that implicated the defendant, Carter's testimony would be merely cumulative at a new trial.   Id. at ¶¶32-33.   The appellate court, however, disagreed with the trial court's analysis.   The court noted that Carter's testimony directly contradicted Mincy's trial testimony that implicated the defendant and thus was not merely cumulative.   Id. at ¶33.   The court thus concluded that the trial court abused its discretion by determining that Carter's affidavit testimony did not warrant an evidentiary hearing.   The court also determined that the trial court abused its discretion by discounting Mincy's credibility without holding an evidentiary hearing.   The court explained:

> "Mincy's affidavits were internally consistent, they did not conflict in any material respect with the evidence offered by the defense at trial, and they conflicted with Mincy's trial testimony only to the extent that they exonerated, rather than implicated, [the defendant] in the shooting.   * * * Mincy had no apparent interest in [the defendant] securing a new trial.   Mincy and [the defendant] are cousins, but their family relationship was demonstrably strained and was not as strong as Mincy's relationship with [the victim]."

Id. at ¶30.

{¶ 26}  Gaines, like Green and Fuson, is distinguishable from the case at bar.   In Gaines,

Carter, a new eyewitness who had not previously testified at trial, offered testimony that exonerated the defendant. Carter's affidavit did not recant prior testimony. In the case sub judice, however, Dunn is not a new eyewitness whose credibility is unknown. Instead, Dunn testified at appellant's criminal trial and now recants that testimony to exonerate appellant. Thus, because Dunn is not a new eyewitness to the criminal acts and because he previously testified at appellant's trial, we do not believe Gaines applies in the case at bar and requires the trial court to hold an evidentiary hearing to ascertain the credibility of Dunn's recanted testimony.

{¶ 27} Moreover, in Gaines neither of the witnesses was the defendant's co-defendant. Instead, one was a disinterested bystander who had not previously testified at trial and the other the victim's half-brother. In the case sub judice, by contrast, Dunn is appellant's co-defendant. Additionally, in Gaines, unlike in the case at bar, the trial judge who reviewed the defendant's new trial motion did not preside over the defendant's trial and thus had no opportunity to previously hear testimony from the victim's half-brother. In the present case, the same trial judge presided over appellant's trial and reviewed his new trial motion. The same trial judge heard Dunn's trial testimony and reviewed his recanted affidavit testimony. Thus, unlike the judge in Gaines who did not preside over the defendant's trial but did review his new trial motion, the trial judge in the case sub judice was in a position to ascertain Dunn's credibility without holding an evidentiary hearing. Additionally, in Gaines the recanting witness had a stronger familial relation to the victim than to the defendant and thus arguably did not have an interest in securing a new trial for the defendant. In the case at bar, however, Dunn and appellant appear to be friends, and Dunn thus has some interest in securing a new trial for appellant.

{¶ 28} Although the Gaines court applied the Calhoun factors to evaluate the credibility of

the affidavit testimony, we do not find it necessary to specifically adopt or reject such an analysis in the case sub judice.   Instead, as we explained above, Gaines is factually distinguishable. Consequently, we do not agree with appellant that Green, Fuson, and Gaines demonstrate that the trial court in the case sub judice abused its discretion by overruling his new trial motion without holding an evidentiary hearing to consider the credibility of Dunn's recanted testimony.

{¶ 29}  Accordingly, based upon the foregoing reasons, we hereby overrule appellant's sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

[Cite as *State v. Hatton*, 2014-Ohio-3601.]

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted.   The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court.   The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court.   Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Hoover, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele
Presiding Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.